ALANSON CAPEHART v. KADER BIGGS & CO.

*Mortgage Deed—Sale under Power—Notice to Mortgagor—Injunction.*

1. The plaintiff instituted an action against the defendants for an account, whereupon the defendants, under powers contained in certain mortgages executed to them by the plaintiff, advertised his land for sale; there had been numerous dealings between the parties for many years, and the status of the account was in dispute ; *Held*, that the defendants should be restrained from selling under the mortgages until the action for account is tried, and the balance due ascertained by judgment.

2. A sale under a power contained in a mortgage can be invalidated by the mortgagor's showing that nothing was due under the mortgage, or that before the sale he tendered the amount really due, or by proof of a non-conformity with the power in any essential particular.

3. A mortgagee, before exercising a power of sale contained in the mortgage, should give the mortgagor reasonable notice (say three months) that in default of payment he will sell ; otherwise, the want of notice is ground for an injunction to stay the sale until proper notice is given.

(*Kornegay* v. *Spicer*, 76 N. C., 95 ; *Whitehead* v. *Hellen*, *Ibid*, 99 ; *Mosby* v. *Hodge*, *Ibid*, 887 ; *McCorkle* v. *Brem*, *Ibid*, 407, cited and approved.)

MOTION for an Injunction heard at Chambers in Raleigh on the 21st of June, 1877, before *Cox, J.*

The plaintiff instituted an action against the defendants at Spring Term, 1877, of Northampton Superior Court for an account and settlement, and thereupon the defendants who held a mortgage with a power of sale upon the plaintiff's property worth $20,000, immediately advertised the same for sale, to the end that they might purchase it to secure their claim of $5,000. For several years there had been large transactions and numerous dealings between the parties, amounting to about $100,000, and it was alleged that there was still a large disputed account between them which the defendants refused to adjust, unless the plaintiff would submit to certain claims alleged to be unjust.

Wherefore the plaintiff applied to *Buxton, J.*, at Northampton, for an order restraining the defendants from selling the property until the determination of said action, and the ascertainment of the balance due them. This order was granted and made returnable before the Judge of the District, at Chambers in Raleigh on the 21st of June, 1877, when the defendants appeared and filed counter affidavits. Upon consideration of the case, His Honor held that the plaintiff was entitled to the injunction as prayed for, and gave judgment accordingly, and the defendants appealed.

*Messrs. W. W. Peebles* and *R B Peebles*, for plaintiff.
*Mr. W. N. H. Smith*, for defendants.

PEARSON, C. J. 1. This is a special as distinguished from the common injunction ; that is, if the injunction was dissolved under the old practice, or not granted until further order under the new practice, and the defendants are allowed to sell the land, the main purpose of the action would be defeated and the merits of the case would be disposed of in this preliminary stage upon affidavits. For which reason, whenever the bill taken as an affidavit made a probable ground in support of the plaintiff's equity, the injunction was continued until the hearing, although the answer fully denied all of the facts upon which the equity was based.

In this case the affidavit of the plaintiff avers his belief, that upon taking an account it will be found that nothing is due to the defendants, or at most only a small amount, not exceeding, say $200. The defendants in their affidavit aver that the plaintiff is indebted to them $5,239. So here is an important controversy. How the fact is, cannot be told until the trial of the action, and the Court will not permit the defendants to sell under the power, and defeat in that way the main purpose of the action.

2. This case presents an unusual feature. The plaintiff

commences an action for an account; thereupon the defendants seek to take a short cut and get ahead of the plaintiff by selling him out under powers contained in the deeds to secure the debt, before the action is tried and the balance due is ascertained by judgment. The defendants can hardly expect that the Court will consider the balance fixed by their affidavit which professes to set out all of the dealings of the parties, and many accounts rendered, &c , in spite of the fact that the plaintiff avers upon his oath that he believes on taking an account, it will be found that little or nothing is due to the defendants. The plaintiff by commencing an action shows that he wishes an account to be taken in order to ascertain the true balance. The defendants attempt to prevent an account, or rather to make one useless for the main purpose of the plaintiff, by a sale of the land under the powers. The reason given for their hasty movement is, that they became satisfied by the commencement of the action that the purpose of the plaintiff was to delay the collecting of the large amount justly due to them. Whereas, taking into consideration the fact that the land is valued for taxes at $15,000, it would be more reasonable to infer that the purpose of the plaintiff was to have the balance ascertained, and if any thing should be found against him, to raise the amount by a mortgage of the land to some other person and square off with the defendants.

The attempt on the part of the defendants to close up the matter before an account is taken, and thus to disturb the course of justice, looks badly in the absence of an averment that the debt is not amply secured, even although it amounts to $5,239, and the whole of it is secured by the mortgages, about which no question is made by the plaintiff; for if the debt be amply secured, no harm will result from the delay necessary to have the account taken.

3. There is a further consideration. Although mortgagors, when there is no controversy about the debt, frequently join

in the sale and in the execution of the deed to the purchaser in order to make the land bring its full value by assurance of a clear title, a Court of Equity will never compel the mortgagor to join in the execution of the deed to the purchaser ; he is left free to resort to such remedies as he may have in order to invalidate the sale. (See Coot on Mortgages.) In our case the plaintiff might invalidate a sale made under the power by proof that nothing was due under the mortgages, and so the power was defunct; or by proof, that before the sale or even on the day of sale, he tendered the balance really due, together with the expenses incurred preliminary to the sale, making the advertisement, &c. ; or by proof of a non-conformity with the power in any essential particular. With this cloud on the title of the purchaser no third person would bid except at a very low figure, for no one is willing to " buy a law suit," and so there would be no bidder except one member of the firm at a sale made by the other member, or by some agent of the firm, which would be the same in its legal effect.

4. There is still another consideration. These deeds contain no provision that before advertising for the sale, the creditor must give notice in writing that he peremptorily demands payment, and will sell under the power unless the money is paid within a reasonable time, say three months. In our case the plaintiff is startled as "by a clap of thunder in a cloudless sky" by the announcement that his home is to be sold for cash at public auction on an advertisement of fifteen days. Thus the plaintiff was taken completely by surprise. He has had no opportunity to make arrangements to raise the money by a mortgage to a third person, which it is reasonable to suppose it would have been in his power to do, as the land is worth three times the amount claimed by the defendants; and he does not know the amount that is really due as he swears. Had the defendants notified the plaintiff in reasonable time,—"we shall expect prompt payment and

in default sell under the powers"—the plaintiff would have had no right to complain; but he was lulled to sleep by the fact that the defendants let the day of payment pass, and to wake him up by an advertisement to sell in fifteen days, is an act of gross oppression, rather aggravated than excused by the fact that the plaintiff had commenced an action for an account. Coot in his work on Mortgages lays it down as settled, that every mortgage with a power of sale ought to contain a provision to this effect, and that such is the usual form of deeds to secure the payment of money in England. The doctrine is so reasonable and fair, that every lawyer will assent as soon as it is suggested. These powers to sell are inserted as substitutes for a sale under a decree of foreclosure, for the ostensible purpose of saving the costs of a bill in equity to foreclose. The decree of sale is always after reasonable notice of the decree, say three months, in order to give the mortgagor an opportunity to raise the money and prevent a sale. It follows that the power of sale should conform to what would have been the provisions in a decree of sale, and the omission of a provision that notice in writing shall be given to the mortgagor, for three months prior to the time that the land is to be advertised for sale, shows that the purpose was not to save costs, but to put the mortgagor at the mercy of the mortgagee. It would seem that the omission in the mortgage of a provision for notice to the mortgagor before the land is advertised for sale is not fatal to the validity of the deed, and that the omission can be cured by a notice in fact; in this way the mortgages of the present time may be helped out. It will be expected that after the publication of this opinion, every mortgage of land for a loan of money with a power of sale will contain a provision for the notice referred to; otherwise the omission will be imputed to a purpose to oppress the mortgagor. Usually such mortgages are made with a view to a permanent investment, and the debtor has a right to expect reason-

able notice when the creditor wishes to call in his money. If the security be not ample, the creditor may enter and take the rents and profits in part payment of the mortgage debt; but notice must be given, or else the want of it will be ground for an injunction to stay the sale until the proper notice is given. on the same principle that equity interferes and gives relief against penalties and forfeitures, and allows an equity of redemption, to-wit; the object was to secure the payment of the money, and provided that object is accomplished, equity does not consider "time as of the essence of the contract," and will interfere to prevent oppression by an unconscientious use of the power which one party has gained over the other at law. The Courts are obliged to take notice of the fact that a man pressed for money will submit to any terms that the conscience of the lender will permit him to impose. Shylock required a pound of his debtor's flesh if he failed to pay " the monies and usuries " at the day. The deeds in our case authorize a sale by which the debtor is to be turned out of house and home, without an opportunity to raise the money by other means, " on advertising for a reasonable time—*not less than ten days.*" The exercise of such a power without reasonable notice that the defendants demand payment, (the security for the debt being ample.) is oppression from which the Court will relieve.

I have made no references to the pages in Coot's work on Mortgages on purpose to induce the members of the bar to read that valuable work; for no mortgage with a power of sale has been called to the notice of any one of the Court, in which a provision for notice to the mortgagor is required before making advertisement of sale, save myself, in two or three deeds that I drafted for my own use in which a provision for notice to the mortgagor is made. The propriety and fairness of such a provision were so apparent that I inserted it without having read Coot's book. This shows that the members of the bar have not read that valuable

book or devoted much thought to the subject. Coot shows the old mode of foreclosing a mortgage, in the time when Powell on Mortgages was written, by decreeing an absolute title in the mortgagee, unless the money due on the mortgage be paid, say in three months after the decree. He then shows how the mode of foreclosing was gradually changed by introducing a decree for sale, unless the money as ascertained to be due by an account taken under the direction of the Court was paid, say in three months after the decree for sale. And he then shows how the mode of foreclosure by a power of sale was introduced as a substitute for a decree of sale *in order to save costs,* and shows that the power of sale ought to conform to what would have been the decree of sale.

This case falls under the doctrine established by *Kornegay* v. *Spicer,* 76 N. C. 95; *Whitehead* v. *Hellen,* 76 N. C. 99; *Mosby* v. *Hodge,* 76 N. C. 387; *McCorkle* v. *Brem,* 76 N. C. 407.

There is no error in the ruling of His Honor.

PER CURIAM.                                   Judgment affirmed.