MARY A. BANKS v. JOSEPH PARKER and others.

*Equities Between Mortgagee and Purchaser—Injunction.*

1. A person in the quiet possession of real estate as owner, may obtain an injunction to restrain others from dispossessing him by means of process growing out of litigation to which he is not a party.

2. A mortgaged to B 940 acres of land, and thereafter conveyed to C his right of redemption in 220 acres.   Subsequently, A made to B another mortgage on the unsold portion of the land and considerable other property, to secure a large additional indebtedness and a small balance on the first debt.   B sold the entire tract of 940 acres under both mortgages at the same time, brought ejectment and recovered judgment against the widow of C in possession of the 220 acres ; *Held*, that the heirs of C, also in possession, were entitled to an injunction against the enforcement of such judgment until the equities between all the parties could be declared.

(Smith, C. J., dissenting.)

(*Kornegay* v. *Spicer*, 76 N. C., 95 ; *Capehart* v. *Biggs*, 77 N. C., 261, cited and approved.)

MOTION for an Injunction, heard at Fall Term, 1878, of PERQUIMANS Superior Court, before *Eure, J.*

See *Parker* v. *Banks*, 79 N. C., 480.   Mary Banks, the plaintiff, is the widow of Thaddeus F. Banks, and the other plaintiffs are his children and heirs at law.   In 1868, David Parker sold and conveyed to C. C. Pool nine hundred and forty acres of land, lying in the county of Perquimans, for

$3,600, payable in installments, and took from Pool a mortgage on the same to secure the purchase money, $1,600 of which was paid by Pool. In the same year Pool sold two hundred and twenty acres of the same tract to said T. F. Banks for $2,000, which he paid in full.

In June, 1872, David Parker took another mortgage from Pool to secure a large indebtedness, including some small balance, as plaintiffs allege, remaining due on the debt secured by the first mortgage, and conveyed a large amount of property, real and personal, but only seven hundred and twenty acres of the tract conveyed in the first mortgage, leaving out the two hundred and twenty acres that had been sold to Banks. After the death of Banks, which occurred in 1873, David Parker, the mortgagee, advertised the sale of the whole nine hundred and forty acres, under both mortgages, and sold the same in mass, and no other property conveyed in the second mortgage besides the nine hundred and forty acre tract was sold at that time. And at this sale, Joseph, James and John Parker, sons of David Parker, became the last and highest bidders, who it is alleged by plaintiffs paid nothing for the land, and answer equivocally on that point. David Parker, the mortgagee, died before making a deed to his sons, and they, after his death, had a trustee appointed in his stead who executed to them a deed for the entire tract of nine hundred and forty acres. The three Parkers after receiving the deed contracted to convey the land to T. R. Askew and wife, and they have entered into a contract to convey to W. C. Lowery. There is no allegation that any money was paid by any of these parties for the land upon their contracts. They are all parties to this action and had full knowledge, as is alleged, of the plaintiffs' right, and it is not denied by them.

The Parkers have brought an action of ejectment against Mary Banks, the widow, and have obtained judgment against her and are about to turn her out of possession by a writ of

BANKS *v.* PARKER.

*habere facias possessionem.* Her children, the other plaintiffs, who are those really in interest, were not made parties to the action of ejectment, and are also about to be ejected from the premises.

At fall term, 1878, of said court an application on motion of plaintiffs was made to the judge then presiding at chambers for an injunction restraining the defendants who were plaintiffs in the said action of ejectment, from suing out and executing the writ of possession. The motion was refused and the plaintiffs appealed.

*Mr. J. W. Albertson,* for plaintiffs.
*Messrs. Gilliam & Gatling,* for defendants.

ASHE, J. (After stating the case.) We are not informed upon what ground the restraining order was refused. If it was denied on the ground that the children of T. F. Banks who were not parties to the action of ejectment had no right to interpose in that suit and ask that the writ of possession should be restrained, we think it was error; for they are the equitable owners of the land, the very persons whose rights are to be most affected by the execution of the writ of possession. They have the right to interpose and ask the court for its aid in protecting them from a gross act of injustice. A person in the quiet possession of real estate as owner may obtain an injunction to restrain others from dispossessing him by means of process growing out of litigation to which he was not a party. High on Injunctions, § 259; 28 Ill., 81. If it was refused on the ground that there was a want of equity on the part of the plaintiffs, we think it was equally erroneous; for the plaintiffs have a clear equity to call upon the court for its protection. There is enough alleged in the complaint and not denied, and confessed in the answer, to entitle them to the injunction.

They have been unfairly dealt with in this transaction.

It is probable if the seven hundred and twenty acre tract had been sold by itself as it ought to have been, it would have brought enough to have disincumbered the two hundred and twenty acre tract. All the facts in this case seem to us to disclose a purpose on the part of David Parker and his sons to take advantage of the plaintiffs. He waits until after the death of T. F. Banks before he undertakes to sell the land, and then he sells in mass under both mortgages— a mode of sale that was calculated to prevent competition and stifle bidding. It was bid in by his sons who it is more than probable never paid anything for it, for though they say they accounted with David Parker for the amount of their bid, they state facts in that connection which are calculated to raise a doubt. They say David Parker was sick at the time of the sale and died soon after, and that was the reason why he did not make them a deed. If he was too ill to make a deed, he was hardly well enough to come to an account and settlement. We must believe, since the two hundred and twenty acre tract brought $2,000, that the remaining seven hundred and twenty acres would have sold for more than enough, with the $1,600 paid, to have satisfied the residue of the debt secured by the first mortgage, if the sale had been fairly conducted.

Mortgages with power of sale are regarded with great jealousy, and when there is any unfairness or any suggestion of oppression, the mortgagee will be enjoined until the balance due is ascertained, and all equities between the parties declared. *Kornegay* v. *Spicer,* 76 N. C., 95; *Capehart* v. *Biggs,* 77 N. C., 261.

We are of opinion the injunction should have been granted until the hearing. There is error. Let this be certified to the end that the injunction may be granted and further proceedings had in conformity to this opinion.

Error.                                    Reversed.