794 P.2d 154

The WESTCOR COMPANY LIMITED
PARTNERSHIP, a limited
partnership, Plaintiff-Appellee,

v.

Bryant PICKERING,
Defendant-Appellant.

No. 1 CA-CV 88-491.

Court of Appeals of Arizona,
Division 1, Department E.

May 17, 1990.

Murphy & Posner by Michael L. Murphy,
K. Bellamy Brown and Roger R. Foote,
Phoenix, for plaintiff-appellee.

Morrison & Morrison by John G. Morrison, Scottsdale, for defendant-appellant.

## OPINION

SHELLEY, Judge.

Plaintiff, The Westcor Company Limited Partnership (landlord), and CompuShare Corporation (tenant), an Arizona corporation, were the parties to a three-year written lease agreement for the premises located at a shopping center in Phoenix, Arizona. The term of the lease commenced on November 15, 1983, and ended three years after the commencement date. Defendant Bryant Pickering (guarantor) was one of three persons who signed a written guarantee of said lease agreement. Landlord sued tenant and the three guarantors for breach of the lease. Landlord filed a motion for summary judgment against tenant and guarantor on October 30, 1987. The other guarantors had filed a petition for bankruptcy. The trial court granted the motion for summary judgment and final judgment was entered on January 20, 1988, in favor of landlord and against tenant and guarantor in the sum of $34,311.22 plus prejudgment interest of $861.75, together with attorney's fees in the amount of $2,541 and costs in the sum of $84 plus accruing costs. Guarantor timely appealed.

The guarantee was in a separate written document entitled, "Guarantee of Lease." The guarantee does not expressly state the length of time it is to be effective nor does it state that it applies to any extension or renewal of the original lease term. The lease and the guarantee were executed on

July 25, 1983. On the same date, landlord and tenant executed a document entitled, "Option to Renew." The option granted tenant the right to renew the lease for an additional three-year period with the option to be exercised in writing not less than 180 days prior to the expiration of the original lease term. It also provided that if the option to renew was exercised, the renewal would, with one exception, be upon the same terms and conditions as contained in the original lease, but without an additional option to extend. The one exception was the amount of the minimum guaranteed annual rental together with a formula for determining an adjustment to that rental. Tenant did not exercise its option within the time limits specified within the lease. No extensions of time were given for the exercise of said option prior to the expiration of the lease. The lease expired November 15, 1986. On December 19, 1986, landlord wrote a letter to tenant which reads:

December 19, 1986

Mr. Randall Jones

CompuShare, Inc.

4619–21 E. Cactus

Phoenix, AZ 85032

RE: VILLAGE SQUARE II—1987 RENTAL INVOICE OPTION RENEWAL

Dear Mr. Jones:

Your signature below will serve as your agreement to exercise your option to renew your lease agreement with The Westcor Company Limited Partnership, to extend the term of your lease for one three (3) year period commencing November 14, 1986 and expiring November 13, 1989.

In addition, based on our budget estimates, your monthly 1987 Common Area Maintenance charge will be $.096 per square foot and Real Estate Taxes and Insurance will be $.066 per square foot. Therefore, following is the calculation of your monthly Rental Charges for 1987:

| | |
|---|---:|
| Minimum Rent | $4,111.25 |
| Common Area Maintenance | 364.00 |
| Real Estate Tax and Insurance | 250.00 |
| 5.325% Rental Tax | 251.62 |
| Total: | $4,976.87 |

Monthly Rental Charges are due and payable in advance no later than the first day of each month. As in the past, you will not receive a monthly statement. Please pay monthly from this invoice, making your check payable to VILLAGE SQUARE II.

For the period November 14, through December, 1986, a balance in Minimum Rent plus 5.325% Rental Tax is due as follows:

December 19, 1986

CompuShare, Inc.

Page 2

| | |
|---|---:|
| November 1 – 13 /$3,795.00 × 12 ÷ 365 × 13 days = | $1,621.97 |
| November 14 – 30 /$4,111.25 × 12 ÷ 365 × 17 days = | 2,297.79 |
| December, 1986 /$4,111.25 | 4,111.25 |
| Less amount paid (Same Period) | (7,590.00) |
| | 441.01 |
| 5.325% Rental Tax | 23.49[sic] |
| Total | $ 464.49 |

Please make your check payable to Village Square II in the amount of $464.49 and send to this office at your earliest convenience.

~~Also enclosed is your annual statement of net sales to be completed and returned to us no later than 30 days after the close of each lease year, or January 30, 1987.~~

Should you have any questions, please feel free to call.

Sincerely,

WESTCOR PARTNERS

Peggy Walser

General Manager/Neighborhood Shopping Centers

PW/np

cc: Selma Frost—Project Accounting

Lynda Ransom—Leasing

ACCEPTED AND APPROVED:

BY S/Randall Jones

Randall Jones, Tenant

Tenant accepted and approved the "renewal" but did not date the same. Approximately five months after November 14, 1986, tenant defaulted and left the premises. Landlord stated in its complaint and in an affidavit that tenant "renewed" the lease on or about December 19, 1986. Randall Jones, as president of tenant, filed his affidavit which said that tenant did not accept and approve the "renewal" until February 11, 1987. There is no indication in the record of any oral discussions between landlord and tenant with respect to renewing the lease. The first indication of the possibility of "renewal" of the lease is landlord's December 19 letter.

The guarantor asserts that the guarantee did not cover the renewal term provided for in the lease in the event the option to renew was exercised. We agree.

■■■ A contract of guarantee will be strictly construed to limit the liability of the guarantor. *See Consolidated Roofing & Supply v. Grimm,* 140 Ariz. 452, 682 P.2d 457 (App.1984). In the case of *Zero Foods Storage, Inc. v. Udell,* 163 So.2d 303 (Fla.App.1964), the court stated:

It appears that there is a split of authority as to whether or not a guarantee not identified as a continuing one will carry over to an extended or renewal term, when the option is exercised by the action or inaction on the part of the lessee without the participation or consent of the guarantor. However, it appears that the better reasoning is contained in those authorities which hold that a guaranty of the performance of a written lease for a specific term does not continue into a successive term ..., *without the express terms to show that the lease was of a continuing nature.*

*Id.* at 304 (emphasis added) (citation omitted).

In *Zero Foods,* the term of the lease was from August 1, 1956, through July 31, 1961. It provided for an automatic extension of the lease unless the lessee gave written notice at least six months prior to August 1, 1961, of its intention not to extend the original term. The guarantee stated:

WHEREAS, ZERO FOOD STORAGE, INC., a Florida corporation, has heretofore executed a lease to GEORGIA BROILERS OF FLORIDA, INC., a Florida corporation, ... covering the period from August 1, 1956 to and including July 31, 1961; and

. . . .

1. LAURANCE UDELL hereby guarantees his *full,* prompt and faithful payment, *performance and compliance* by GEORGIA BROILERS OF FLORIDA, INC., a Florida corporation, its successors and assigns of *all of the terms and conditions of the above described Lease.* [Emphasis added.]

The pertinent portion of the present guarantee reads as follows:

WHEREAS, a certain Lease of even date herewith, has been or will be executed by and between The Westcor Company Limited Partnership, therein and herein referred to as "Landlord", and CompuShare, Inc., an Arizona corporation, therein and herein referred to as "Tenant", covering certain premises in Village Square II, and

WHEREAS, the Landlord under said Lease has required as a condition of its execution of said Lease that the Undersigned guarantee the full performance of the obligations of Tenant under said Lease; and

WHEREAS, the Undersigned is desirous that Landlord enter into said Lease with Tenant,

NOW, THEREFORE, in consideration of the execution of said Lease by The Westcor Company Limited Partnership, as Landlord, the Undersigned hereby conditionally *guarantees the full performance of each and all of the terms, covenants, and conditions of said Lease to be kept and performed by Tenant,* including the payment of all rentals and other charges to accrue thereunder. [Emphasis added.]

Landlord asserts that *Zero Foods* is not applicable to this case because:

In *Zero Foods* the Guarantee specified the period which was covered as August 1, 1956 to July 31, 1961. The option period was specifically excluded from this Guarantee. Such is not the case herein. Here the Guarantee is limited only to "all the terms and conditions of the above described lease"; such terms and conditions include the option and extension. There is no limiting language as found in *Zero Foods*.

We disagree.

The statement with respect to the beginning and termination dates of the lease in *Zero Foods* was located in the recital paragraph of the guarantee. It only serves to identify the lease. This statement did not specifically exclude the option period from the guarantee. It adds nothing to that guarantee as the guarantee was subject to "full, prompt, and faithful payment, performance, and compliance ... of all of the *terms* and conditions of the above-described lease." The beginning and termination dates are part of the *terms* and conditions of any lease, including the present lease.

We agree with the statement set forth in *Zero Foods* which requires that for a guarantee of the performance of a written lease for a specific term to continue into a successive term, the "express terms" of the lease must show that it is of a continuing nature. *Id.* at 304–05. There are no express terms in the lease in the present case to indicate that it is of a continuing nature with respect to a successive term. The trial court erred in entering judgment in favor of landlord.

■■■ Assuming *arguendo* that the guarantee covered the renewal contemplated in the lease, we would still find that the trial court erred in granting judgment in favor of landlord. The renewal option was not exercised within the time period specified by the lease. No extensions of time were given during the term of the lease. The lease expired November 14, 1986. Paragraph 19 of the lease reads:

*HOLDING OVER.* If Tenant shall hold over after the term of this lease, Tenant shall become a tenant on a month-to-month basis upon all the terms, covenants and conditions herein specified, including payment of percentage rent based upon net sales over the amount set forth in Article 2(B), but exclusive of any renewal options; provided however, that during any such hold over period, the minimum rent payable on account thereof shall be equal to 150% of the minimum rent in effect upon the date of expiration of the term hereof.

On November 15, 1986, a month-to-month tenancy commenced. Article 2(B) of the lease, mentioned in paragraph 19, was crossed out with the blanks noted therein as "N/A." Thus, the holdover provision had two basic differences from the lease: 1) the inclusion of the percentage rent provision of article 2(B), and 2) a minimum rent equal to 150% of the minimum rent in effect on the date of the expiration of the term of the lease. This amount is substantially more than the minimum rent provided for in the lease and in the option to renew.

In our opinion, when the lease term ended and the month-to-month holdover commenced, even if the guarantee covered renewal, the subsequent "renewal" did not recreate any obligations on the part of the guarantor. The "renewal" was in fact a new lease contract, not a renewal. Guar-

antor did not guarantee tenant's performance of the new lease. Landlord points out that the guarantee states:

1. This Guarantee shall not be released, diminished, or otherwise affected by:

....

d. The granting of extensions of time by Landlord with respect to the performance of any of the terms and provisions of said Lease.

....

f. The failure by Landlord to require strict performance of any term or provision of said Lease or to exercise any rights, power, or remedy granted to Landlord in said Lease.

If the guarantee covered a renewal as contemplated in the lease, then an extension of time to renew the option during the lease term would have been binding on the guarantor in view of the above provisions of the guarantee. However, this did not occur. An extension of time given after the lease term has expired is not actually an extension. Nor can the landlord's waiver of the tenant's failure to timely exercise a renewal option bind the guarantor. Landlord correctly points out that the cases of *Pouquette v. Double L–W Ranch, Inc.*, 11 Ariz. App. 279, 282, 464 P.2d 350, 353 (1970), and *Grueber v. Castleberry*, 23 Ariz.App. 322, 533 P.2d 82 (1975), hold that a landlord can waive strict compliance with the requirement for exercising a renewal option. However, these two cases are factually inapposite because they did not involve a guarantor. Neither case held that a "renewal" of a lease after the term of the lease had expired would subject a guarantor to guarantee the renewal term.

In the case of *Shirley v. Venaglia*, 86 N.M. 721, 527 P.2d 316 (1974), the court stated:

*The guaranty agreement is a separate, distinct contract between guarantors and the lessors and should be strictly construed.*

'A guarantor is entitled to a strict construction of his undertaking and cannot be held liable beyond the strict terms of his contract.'

*Id.* at 724, 527 P.2d at 319 (emphasis added). Lessors and lessees between themselves can make any agreement they desire to make, but they cannot expand a guarantor's obligations. There is a dispute in the record as to when the December 19, 1986, "renewal" letter sent to tenant by landlord was approved by tenant. Landlord says it occurred on or about December 19, 1986; tenant says February 11, 1987. In either event, the lease expired on November 14, 1986, and tenant began a month-to-month tenancy on November 15 which continued for more than a month, at the very least. The rent for the month-to-month tenancy was *substantially* higher than that contemplated for a renewal.

As stated in *Venaglia*, "the guarantee agreement is a separate, distinct contract between guarantors and the lessors and should be strictly construed." *Id.* at 724, 527 P.2d at 319. The December 19 letter from landlord to tenant was, in effect, an offer to enter into a new lease and when the offer was accepted by tenant, it constituted a new contract between landlord and tenant not within the terms of the guarantee.

When the time to exercise the option expired, followed by the termination of the lease term without an extension of time, the subsequent "renewal" was actually only a new contract or a waiver of a contract term which was binding only on landlord and tenant. The "renewal" was not covered by the guarantee.

Guarantor's request for an award of attorney's fees on appeal is granted. *See* Rule 21, Arizona Rules of Civil Appellate Procedure, and A.R.S. § 12–341.01. Guarantor may establish the amount of his attorney's fees and costs by complying with Rule 21(a) and (c)(2).

The judgment of the trial court is reversed and this case is remanded to the trial court for further proceedings consistent with this decision.

EUBANK, P.J., and LANKFORD, J., concur.