821 P.2d 725

Kristin GATECLIFF, a married woman, and Kevin Gatecliff, her husband, Plaintiffs–Appellants,

v.

GREAT REPUBLIC LIFE INSURANCE COMPANY, a Washington corporation, Defendant–Appellee.

No. CV–90–0223–PR.

Supreme Court of Arizona, In Banc.

Dec. 3, 1991.

Kunz & Waugh, Ltd. by Donald R. Kunz, Phoenix, for plaintiffs-appellants.

Stockton & Hing by Robert Ong Hing, Joyce N. Van Cott, Jeffrey M. Koontz and Thomas F. Ames, Scottsdale, for defendant-appellee.

## OPINION

CAMERON, Justice.

## I. JURISDICTION

Kristin and Kevin Gatecliff (plaintiffs) petition for review of the court of appeals' memorandum decision affirming the trial court's order of summary judgment for Great Republic Life Insurance Co. (Great Republic). Great Republic is a Washington corporation. We granted review under rule 23, Ariz.R.Civ.App.P., 17A A.R.S. We have jurisdiction under Ariz. const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## II. ISSUE PRESENTED

Plaintiffs present three issues for review. Our resolution of the first issue, however, makes it unnecessary for us to reach the remaining two. The issue we resolve is:

Did the plaintiffs introduce evidence sufficient to create a genuine issue of material fact regarding Great Republic's liability under the alter ego, instrumentality or direct liability theories?

## III. FACTS

Kristin Gatecliff, a California resident, was insured for health care under Great Republic's Allcare group policy through her employer. While the policy was in effect, Kristin was diagnosed with rheumatoid arthritis. She submitted claims to Great Republic for medical benefits provided under the policy, and Great Republic paid them. Thereafter, Great Republic cancelled Kristin's insurance and denied all other claims for benefits. Plaintiffs protested the cancellation of the insurance, asserting bad faith breach of contract on the ground that Kristin's right to payments from Great Republic for future medical expenses vested, notwithstanding cancellation of the policy, when treatment for the arthritis became necessary.

Plaintiffs, when faced with Great Republic's denial of their claims, sought conversion coverage under an alternative policy available to former Allcare policyholders. In response, plaintiffs received a letter on Great Republic Life Insurance Company letterhead with an address in Toluca Lake, California. The letter stated that Great Republic had terminated the Allcare Master Plan contract, thereby cancelling insur-

ance for all groups or individuals enrolled in the plan. Regarding conversion coverage, the letter directed plaintiffs to complete an enclosed application and submit it "directly to Great Republic Life Insurance Company in ... Seattle, Washington." The letter further explained that an agent in Washington would "explain the benefits, quote premium[s] and determine eligibility." Thereafter, plaintiffs corresponded only with Great Republic in Washington (GRW).

Correspondence from GRW directed plaintiffs to send premiums and any claims plaintiffs might incur to the Seattle office. The letter further related the effective date of plaintiffs' conversion coverage and established that premiums would be due on the first of each month. A later letter explained that Kristin was eligible for conversion coverage, but emphasized that "the benefits under the Conversion Plan are less than those of the Allcare Plan." This letter from GRW, signed by James D. O'Hanlon (O'Hanlon) as vice-president of "Great Republic Life Insurance Company," stated, "*We* have the right to cancel the Allcare plan and *we* have done so effective October 31, 1984." (Emphasis added).

Plaintiffs submitted into evidence eight letters they received from Great Republic. Although some letterheads indicated a California or Washington address for Great Republic, none of the letterheads indicated that the company was Great Republic of California or Great Republic of Washington. Furthermore, *all* letterheads displayed the same corporate logo in the upper left-hand corner of the stationary regardless of the address given.

## IV. PROCEDURAL HISTORY

After determining from the Arizona Department of Insurance that GRW was authorized to do business in Arizona, plaintiffs filed a complaint naming GRW as defendant. Plaintiffs alleged that GRW was a Washington corporation with its principal place of business in California and authorized to do business in Arizona as a foreign insurer. The complaint further alleged breach of contract and bad faith, and

sought compensatory and punitive damages. Attached to the complaint were memoranda, letters, a certificate of coverage and a master group policy, all of which reflected California addresses for the "Great Republic Life Insurance Company."

GRW filed a Motion to Dismiss/Motion for Summary Judgment, on the grounds that the complaint failed to state a claim upon which relief could be granted, that the court lacked subject matter jurisdiction and because of *forum non conveniens.* Attached to the motion was O'Hanlon's affidavit stating that he was the vice-president and general counsel of "Great Republic Life Insurance Company, a Washington insurer," formed under the laws of Washington with its principal place of business and home offices in Seattle, Washington. He asserted further that GRW's California subsidiary, also called Great Republic Life Insurance Company (GRC), issued plaintiffs' insurance policy, and that GRC operates separate and apart from GRW. O'Hanlon also said that GRC was not authorized to transact insurance in Arizona and maintained no offices, agents, employees or property in Arizona.

The trial court granted GRW's motion to dismiss and plaintiffs appealed. The court of appeals reversed and remanded to the trial court, holding that discovery of the interrelationship between the two corporations "might yield theories of the Washington parent's liability based on an alter ego theory or under the law of agency...." *Gatecliff v. Great Republic Life Ins. Co.,* 154 Ariz. 502, 509, 744 P.2d 29, 36 (App. 1987). The court, however, expressed no opinion about the ultimate viability of these theories. On remand, the trial court granted GRW's motion for summary judgment and plaintiff again appealed to the court of appeals.

In affirming the trial court's order of summary judgment, the court of appeals concluded that plaintiffs failed to establish disputed issues of material fact as to an essential element of their action, unity of control. Therefore, the "plain language of rule 56(c) mandate[d] the entry of summary judgment." Memo.Dec. at 5 (citing *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 272 (1986)). We accepted review because we believe that the evidence was sufficiently disputed to make a grant of summary judgment inappropriate.

## V. DISCUSSION

■ We have held that a motion for summary judgment should not be granted if there is evidence creating a genuine issue of material fact. *Orme School v. Reeves,* 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990). Moreover, when a motion for summary judgment is presented, "[t]he trial court is required to consider those portions of the ... [record] which are brought to the court's attention by the parties." *Choisser v. State ex rel. Herman,* 12 Ariz. App. 259, 261, 469 P.2d 493, 495 (1970) (citing *Pitzen's Wig Villa v. Pruitt,* 11 Ariz.App. 332, 464 P.2d 652 (1970)). On appeal from a grant of summary judgment, this court views the facts "in the light most favorable to the party against whom judgment was taken." *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.,* 140 Ariz. 383, 387, 682 P.2d 388, 392 (1984) (citing *Gulf Ins. Co. v. Grisham,* 126 Ariz. 123, 124, 613 P.2d 283, 284 (1980)).

We hold that the trial court erred in failing to find a question of fact regarding unity of control under either an alter ego or an instrumentality theory. Furthermore, we believe the plaintiffs have produced evidence sufficient to withstand summary judgment under a direct liability theory.

### A. *GRW's Liability under Alter Ego Theory*

■ GRW argues that under an alter ego theory, which allows a parent corporation to be held liable for the acts of its subsidiary when the individuality or separateness of the subsidiary corporation has ceased, 18 Am.Jur.2d *Corporations* § 56, at 862 (1985), plaintiffs must prove both (1) unity of control and (2) that observance of the corporate form would sanction a fraud or promote injustice. *Dietel v. Day,* 16 Ariz.App. 206, 208, 492 P.2d 455, 457 (1972)

(citing *Employer's Liability Assurance Corp. v. Lunt,* 82 Ariz. 320, 323, 313 P.2d 393, 395 (1957)). The court of appeals agreed and concluded that plaintiffs had failed to establish a material issue of fact as to unity of control. It therefore never reached the second portion of the alter ego test. We disagree with this analysis.

■ The record suggests GRW exercised "substantially total control over the management and activities of" GRC. 18 Am.Jur.2d *Corporations* § 59, at 870 (1985). Substantially total control may be proved by showing, among other things: stock ownership by the parent; common officers or directors; financing of subsidiary by the parent; payment of salaries and other expenses of subsidiary by the parent; failure of subsidiary to maintain formalities of separate corporate existence; similarity of logo; and plaintiff's lack of knowledge of subsidiary's separate corporate existence. *Id.* We note that in this case, at least five of the enumerated seven factors are present.

O'Hanlon stated that GRW corresponded with plaintiffs pursuant to an "arms length" administrative services agreement (Agreement) between GRW and GRC. O'Hanlon's affidavit, however, establishes that he was vice-president of *both* GRW and GRC, and that he signed four amendments to the Agreement for both companies. Furthermore, examination of Great Republic documents demonstrates an escalation in services performed by GRW for GRC under the agreement. In 1979, the total twelve-month retainer for administrative services was $360,000. In 1982, the total twelve-month retainer fee had grown to $1.8 million. In 1986, the monthly retainer was eliminated and reimbursement for services was based on GRC's "portion of business administered for line and service departments. Overhead expenses [were] allocated in proportion to the benefits received by GRW and GRC." (January 1, 1986, amendment to Administrative Services Agreement).

Moreover, the Agreement establishes that GRW performed virtually every service necessary for GRC's operation. GRW

avowed that, pursuant to the Agreement, it performed the following services for GRC: underwriting, billing, premium collection and accounting, commission accounting, policyowner's service, general accounting, investment management and accounting, travel and entertainment, computer programming and operation, claims processing, typesetting and printing of forms and other administrative services not specifically excluded. The only services excluded were salaries of employees in the Newport Beach office, legal fees and agent licensing fees.

Great Republic's attorneys and the court of appeals' opinion carefully refer to GRW and GRC as Great Republic Life Insurance Company *of* Washington or Great Republic Life Insurance Company *of* California, respectively. In their day-to-day operations, however, GRW and GRC did not so carefully distinguish between themselves. A person doing business with Great Republic might never know that he or she was doing business with one of two "separate" companies and could reasonably assume that Great Republic was only one company.

The Certificate of Coverage, for example, refers merely to Great Republic Life Insurance Company, without reference to California or Washington. Similarly, the Statement of Benefits and Other Matters refers only to Great Republic Life Insurance Company. Under the provisions "How to File a Claim," claims are submitted to Great Republic Life Insurance Company at a California post office box. There is no indication which company is involved. The letter to plaintiffs' attorney, dated 23 November 1984, contains the heading "Great Republic Life Insurance Company" on one line, with a California address on another, but does not indicate whether Great Republic Life Insurance Company is a California or Washington company. The underwriting department is also styled merely Great Republic Life Insurance Company. In addition, as noted above, the California subsidiary directed plaintiff to do business with their "Washington office," which suggests these are two offices of the same corporation.

We have previously stated that despite the well-settled law that a corporation is a separate legal entity, "when one corporation so dominates and controls another as to make that other a simple instrumentality or adjunct to it, the courts will look beyond the legal fiction of distinct corporate existence, as the interests of justice require...." *Walker v. Southwest Mines Dev. Co.*, 52 Ariz. 403, 414–15, 81 P.2d 90, 95 (1938) (quoting *Platt v. Bradner Co.*, 131 Wash. 573, 579, 230 P. 633, 635 (1924)). We hold there is ample evidence from which the trier of fact could reasonably conclude that unity of control existed.

Upon review of the record, we also find that the interrelationship between the two corporations may promote fraud or injustice and thereby satisfy the second prong of the alter ego standard. Observance of the corporate form in this case could deny plaintiffs recovery from the party responsible for cancelling their insurance policy.

Plaintiffs sent a letter complaining of the cancellation of their policy to GRC. The response from California did not indicate a method by which the Gatecliffs could resolve their grievance, but merely stated "Great Republic Life Insurance Company" was cancelling the Allcare policy. A later letter from GRW, containing the same logo as the letter from GRC, claimed they were responsible for the cancellation but similarly did not direct plaintiffs to proceed one way or another. Thus, observance of the corporate form could permit the two corporations to confuse plaintiffs and frustrate their efforts to protect their rights before suit, while allowing the party responsible for the cancellation to evade liability after suit.

B. *GRW's Liability under the Instrumentality Theory*

■ Plaintiffs maintain that once they have established unity of control under *Lunt* they need not also show that observing the corporate form would promote a fraud or injustice. Plaintiffs rely on cases that they claim adhere to an instrumentality theory, which is distinct from, but very similar to, the alter ego theory. They ar-

gue that under this theory, a plaintiff is relieved of the burden of showing fraud or injustice.

Although these cases do not discuss fraud their facts strongly suggest that this court will only disregard the corporate form when to do otherwise would achieve unjust results. *See Walker,* (corporate form disregarded in shareholder derivative suit because corporate officers failed to obtain board of directors' approval prior to sale of corporate assets); *Savage v. Royal Properties, Inc.,* 4 Ariz.App. 116, 417 P.2d 925 (1966) (corporate form observed because plaintiff, as member of board of directors, participated in decision to transfer assets from old corporation to new corporation); *Platt v. Bradner Co.,* 131 Wash. 573, 230 P. 633 (1924) (corporation issued guarantee answering for debts of its subsidiary which was relied upon by plaintiffs even though it failed to satisfy statute of frauds). Therefore, plaintiffs must still demonstrate some form of injustice under an instrumentality theory.

## C. *GRW's Direct Liability*

■ Alternatively, GRW may be liable to plaintiffs based on its direct involvement in the cancellation of Kristin's benefits, regardless of its status as a non-party to the contract and regardless of whether any fraud or injustice is shown. *See Delos v. Farmers Group, Inc.,* 93 Cal.App.3d 642, 652, 155 Cal.Rptr. 843, 849; *Williams v. Farmers Ins. Group, Inc.,* 781 P.2d 156 (Colo.App.1989); *Farmers Group, Inc. v. Trimble,* 768 P.2d 1243 (Colo.App.1988).

In *Delos,* the plaintiffs sued Farmers Insurance Group (Group) and Farmers Insurance Exchange (Exchange) alleging, *inter alia,* a breach of the implied duty of good faith and fair dealing. Group developed insurance coverage for Exchange. Exchange consisted of policyholders who insured each other by furnishing the means required for losses and costs through their premium deposits. Because Exchange consisted of four million people, a management company, Group, was appointed to handle "all ... monetary and other affairs to see that property is properly accepted and properly disbursed and properly accounted for." *Delos,* 93 Cal.App.3d at 652, 155 Cal.Rptr. at 849.

The policyholders in *Delos* exchanged insurance contracts through Group and Group exercised all other functions of an insurer, including setting rates, settling losses, compromising claims and canceling contracts. In return, Group received a sizable percentage of the premiums deposited. Because it was not a party to the insurance contract, however, Group contended that it was not liable on the bad faith claim. The California Court of Appeals disagreed. The court reasoned:

> If we were to accept the Group's argument and adhere to the general rule that "bad faith" liability may be imposed only against a party to an insurance contract, we would ... also deprive a plaintiff from redress against the party primarily responsible for damages.

*Id.*

In *Trimble,* Farmers was the management company for subsidiary insurance companies that issued insurance policies, including plaintiff's. As such, Farmers hired the claims adjusters and managed the claims office that processed the insured's claims submitted pursuant to his insurance policies with the subsidiary insurance companies. Farmers, however, was not a party to the insurance contracts. Nevertheless, the Colorado Court of Appeals held that Farmers was liable for bad faith breach of the insurance contracts. "Under these circumstances, strict ·adherence to the general rule that liability for bad faith breach may be imposed only against a party to an insurance contract would permit Farmers to shield itself from liability through the device of a management company...." *Trimble,* 768 P.2d at 1247 (citing *Delos,* 93 Cal.App.3d at 652, 155 Cal. Rptr. at 849).

In *Williams,* as in *Trimble,* the insureds claimed Farmers, not a party to the insurance contract, was liable for bad faith breach of contract. Farmers, did, however, handle the insurer's claims and otherwise manage the subsidiary insurance company. As in *Trimble,* the court held that Farmers,

**40**

the management company, could be directly liable for bad faith breach of contract. *Williams,* 781 P.2d at 158. *Cf. Travelers Ins. Co. v. Savio,* 706 P.2d 1258 (Colo.1985) (employer's workmen's compensation insurer must deal in good faith with injured employee and employee may sue for insurer's failure to so deal despite lack of direct contractual relationship); *Johnson v. Scott Wetzel Services, Inc.,* 797 P.2d 786 (Colo. App.1990) (independent adjusting firm may be held liable to injured worker for bad faith processing of a workmen's compensation claim regardless of lack of contractual privity).

At the very least, the record indicates that GRW is the management company of GRC. As in *Trimble* and *Williams,* GRW hired the claims adjusters and managed the claims office that processed plaintiffs' insurance claims. Moreover, GRW determined Kristin's eligibility, benefits and premium for the conversion coverage that ostensibly originated in the GRC policy.[1] The service agreement identifies GRW as responsible for GRC's policyowner's service, claims processing and other administrative services. Likewise, a letter from GRW's agent, O'Hanlon, suggests GRW had the ability to cancel GRC's Allcare insurance plan.

We believe plaintiffs alleged facts sufficient to withstand GRW's motion for summary judgment on a direct liability/management theory.

## V. DISPOSITION

The memorandum decision of the court of appeals is vacated. The decision of the trial court is reversed and remanded for proceedings consistent with this opinion.

GORDON, C.J., and FELDMAN, V.C.J., and MOELLER, J., concur.

CORCORAN, Justice, dissenting:

The plaintiffs insist upon suing the wrong corporation in the wrong state. Arizona is hosting litigation by California residents against a Washington corporation.

The target of the litigation is actually a wholly-owned subsidiary of that corporation, which is incorporated and doing business in California. The venue of this litigation should be California where the plaintiffs reside and where the California corporation issued the policy.

---

1. Although the conversion coverage is not at issue in this case, it is pertinent because it evinces the intertwining relationship between GRW and GRC.