881 P.2d 1177

**HORIZON RESOURCES BETHANY LTD., an Arizona limited partnership, Plaintiff–Appellant,**

v.

**CUTCO INDUSTRIES, INC., a New York corporation, formerly known as Cut & Curl, Inc., Defendant–Appellee.**

No. 1 CA–CV 92–0047.

Court of Appeals of Arizona, Division 1, Department D.

May 10, 1994.

Review Dismissed July 18, 1994.

---

Larry G. Haddy, Phoenix, for plaintiff-appellant.

Gallagher & Kennedy, P.A. by Michael W. Sillyman, Bruce A. Giles, Deborah J. DePaoli, Phoenix, for defendant-appellee.

## OPINION

GERBER, Judge.

Horizon Resources Bethany Ltd. (Horizon) filed suit against Cutco Industries, Inc. (Cutco) for enforcement of a lease guaranty agreement. Horizon appeals from a summary judgment in favor of Cutco. The primary issue on appeal is this: does a guarantee of the performance of a lease for a specific term continue into a successive term when the guarantor consents to alter the lease to

allow an extension or to exercise an option to renew provided in the original lease?

## FACTS AND PROCEDURAL HISTORY

Cutco is the successor in interest to an entity named Cut & Curl, Inc. Cutco is a New York corporation, as was Cut & Curl, Inc. Horizon is the successor in interest to H.D.C. Phoenix Bethany Corp. (H.D.C.) and J.E.H. Development Company (J.E.H.), affiliated entities operated by the Hansen family. In April 1978, H.D.C. and J.E.H. entered into several lease agreements wherein Cut & Curl, Inc., or its subsidiaries, leased space across the country from the Hansen entities.

On or about April 3, 1978, H.D.C. as landlord entered into a specific subject lease with the tenant, Cut & Curl of Bethany Square, Inc., an Arizona corporation which was a wholly owned subsidiary initially of Cut & Curl, Inc. and later of Cutco. Under the lease, Cut & Curl of Bethany Square, Inc. rented space at Bethany Square shopping center located at 43rd Avenue and Bethany Home Road in Phoenix, Arizona. The lease had a ten-year term. It did not provide for extensions. Marvin W. Marcus, as treasurer of Cut & Curl of Bethany Square, Inc., executed the lease. It was attested to by John C. Marchal, the director of real estate for the parent corporation. The tenant's address in the lease was not an Arizona address but the same New York address as that of the parent corporation. The lease also contained a number of references to the parent corporation.

The parent corporation guaranteed payment of the lease, providing H.D.C. with a written guaranty agreement which stated as follows:

In the event of default in the payment of rent hereunder, CUT & CURL, INC. hereby guarantees the prompt payment of rent payable under this lease provided that the total guarantee of such rent shall not exceed the sum of $10,000.00 with respect to the lessee hereunder; and in no event shall such guarantee extend beyond the sum of $50,000.00 during any consecutive twelve (12) month period for all leases between Cut & Curl, Inc., its subsidiaries, and licensees, as Lessees and J.E.H. De-velopment Company, its subsidiaries and affiliates, as Lessors.

(footnote omitted). The guaranty was part of the overall arrangement between Cut and Curl, Inc. and the Hansen entities for the leasing of the various properties throughout the country. Marchal and Marcus signed the guaranty for Cut & Curl, Inc. Marcus was treasurer not only of the subsidiary but also of the parent corporation.

During 1985, Douglas C. Stock headed a company that managed the Bethany Square shopping center for the landlord. Michael Kramer, who had become treasurer of both the parent corporation and its Arizona subsidiary, contacted Stock to discuss certain modifications to the lease. Stock and Kramer negotiated the proposed modifications and eventually executed an addendum to the lease on July 5, 1985. Stock believed that all of the requested modifications were being requested not only by the subsidiary but also by the parent since he dealt solely with persons connected to the parent corporation at its New York offices.

The resulting addendum contained several modifications of the original lease including the addition of options to renew the lease. The terms of the addendum were contained in a letter written on the letterhead of Cutco Industries, Inc. Kramer signed the addendum in his capacity as treasurer of Cut & Curl of Bethany Square, Inc.

During 1988, Randolph Strada managed the Bethany Square shopping center for the landlord. Strada never dealt with the tenant, Cut & Curl of Bethany Square, Inc., but always dealt with persons in Cutco's New York office. Early in the year, he received a letter from Marchal, who identified himself as Cutco's director of real estate and construction, seeking to confirm the expiration date of the lease at Bethany Square. Strada confirmed that the expiration date of the original lease was May 31, 1988 with two five-year options remaining.

In April 1988, Cut & Curl of Bethany Square, Inc. exercised the first option to renew the lease. Kramer, still treasurer of both the parent and the subsidiary, advised Strada by letter that the option was being

exercised. Although Kramer signed the letter merely as "treasurer," the letter contained no reference to the parent corporation but instead referred solely to the subsidiary.

Two years into the option term, Cut & Curl of Bethany Square, Inc. ceased operations and vacated the premises. When Cutco refused a demand to take over the payments due under the lease, Horizon, which had succeeded to H.D.C.'s interest in the lease, filed suit to enforce the guaranty agreement.

After the parties filed cross motions for summary judgment, the trial court granted summary judgment for Cutco. The trial court found no basis for finding Cutco liable on the underlying lease. It concluded that the express terms of the guaranty did not indicate that it was of a continuing nature regarding any successive lease terms and, therefore, Cutco was entitled to judgment under *Westcor Co. Ltd. Partnership v. Pickering,* 164 Ariz. 521, 524, 794 P.2d 154, 157 (App.1990) (holding that for a guarantee of the performance of a written lease for a specific term to continue into a successive term, the "express terms" of the lease must show it is of a continuing nature). The trial court found no merit to Horizon's argument that *Westcor* should be distinguished because of the evidence of the guarantor's knowledge and consent to extension of the lease.

### DISCUSSION

A reviewing court must view the evidence most favorably to the party opposing the motion for summary judgment, taking all inferences from the evidence in favor of the opposing party. *Johnson By and Through Johnson v. Svidergol,* 157 Ariz. 333, 335, 757 P.2d 609, 611 (App.1988).

To the extent Horizon may be arguing that Cutco bound itself on the underlying lease along with its subsidiary, we agree with the trial court that the evidence fails to support that contention. Even though persons who were officers of both the parent and the subsidiary signed the lease, the addendum, and the option to extend the lease, the documents consistently stated that they were being signed on behalf of the subsidiary. Although Cutco may have involved itself in negotiations at various stages on behalf of its subsidiary, the record does not indicate that the parties meant Cutco to be a party to the lease agreement. Its liability was only that of a guarantor.

In its appellate briefs, Horizon argues that Cutco should be held liable on the lease executed by its subsidiary because the subsidiary was a mere instrumentality of the parent corporation. A parent corporation is responsible for actions of its subsidiary when the subsidiary has become a mere instrumentality, so overshadowed by the parent corporation that the separate corporate identity should be disregarded to prevent perpetration of a fraud. *Oldenburger v. Del E. Webb Dev. Co.,* 159 Ariz. 129, 134, 765 P.2d 531, 536 (App.1988).

Horizon has not offered any evidence to show that the affairs of Cut & Curl of Bethany Square, Inc. were conducted as a mere instrumentality of Cutco, other than to show that the subsidiary was owned by the parent and that they shared many of the same officers. As the Nevada Supreme Court said in *Bonanza Hotel Gift Shop, Inc. v. Bonanza No. 2,* 95 Nev. 463, 596 P.2d 227 (1979), a mere showing that one corporation is owned by another or that the two share interlocking officers or directors is insufficient to support a finding of alter ego. The case of *Gatecliff v. Great Republic Life Ins. Co.,* 170 Ariz. 34, 821 P.2d 725 (1991), cited by Horizon, does not hold to the contrary. In *Gatecliff,* the Arizona Supreme Court acknowledges that ownership by the parent and common officers or directors are among the factors tending to show that one corporation exercises control over the management and activities of another. That case makes it clear, however, that an alter ego theory requires not only a showing of unity of control but also proof that observance of the corporate form would sanction a fraud or promote injustice. *Id.* at 37–38, 821 P.2d at 728–29. Horizon provided no evidence of the latter.

Horizon's main argument is that if Cutco consented to having its subsidiary extend the lease, Cutco cannot escape liability under the guaranty agreement. Horizon contends that the trial court erred in failing

to distinguish this case from *Westcor* on that basis. An appellate court is not bound by the trial court's conclusions of law. *City of Scottsdale v. Thomas,* 156 Ariz. 551, 552, 753 P.2d 1207, 1208 (App.1988). Therefore, we make our own determination of how the guarantor's subsequent consent to extension of a lease affects the rule stated in *Westcor* concerning a noncontinuing guaranty.

▮ If we conclude that the lack of express terms showing that the guaranty continued does not prevent the guaranty from applying during the extended term where the guarantor has consented to the extension, then the trial court erred in granting summary judgment for Cutco. The record is replete with evidence from which a trier of fact could conclude that Cutco both consented to the lease's modification, including an option to renew, and also consented to the exercise of the option by its subsidiary. A motion for summary judgment should not be granted if there is evidence creating a genuine issue of material fact. *Orme School v. Reeves,* 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990).

▮ In *Westcor,* this court addressed whether the lease must contain express terms showing that the guaranty continues into the extended term.[1] In quoting from *Zero Food Storage, Inc. v. Udell,* 163 So.2d 303, 304–05 (Fla.App.1964), we recognized a split of authority on this issue, with some courts concluding that express terms are needed and others concluding they are not. *Westcor,* 164 Ariz. at 523, 794 P.2d at 156. In Arizona, however, contracts of guaranty are strictly construed to limit the liability of the guarantor. *Consolidated Roofing & Supply Co. Inc. v. Grimm,* 140 Ariz. 452, 455, 682 P.2d 457, 460 (App.1984). In *Westcor,* we reached the same conclusion as in *Zero Food Storage* that in order for a guarantee of the performance of a written lease for a specific term to continue into a successive term, the express terms of the lease must show that the guaranty is of a continuing nature. *Id.* 164 Ariz. at 523–24, 794 P.2d at 156–57.

However, the court in *Zero Food Storage* indicated that the rule would be different if the option to extend had been exercised with the participation or consent of the guarantor. 163 So.2d at 304. Other courts have also recognized this exception. *See LeCraw v. Atlanta Arts Alliance, Inc.,* 126 Ga.App. 656, 191 S.E.2d 572, 575–76 (1972) (noting that because the undertaking of a surety is strictly observed, it cannot, in law or equity, be bound further than the very term of its contract, and if the principal and obligee change the terms of the contract without the surety's consent, the surety is discharged).

In *Westcor* this court neither engrafted this exception onto the rule we adopted nor indicated its rejection. No issue of consent was raised in that case, and, therefore, it was not necessary to address the issue.

In *Indian Village Shopping Ctr. Inv. Co. v. Kroger Co.,* 175 Ariz. 122, 854 P.2d 155 (App.1993), Division Two of this court addressed whether a guarantor was discharged from its guaranty as a result of a lease modification made without the guarantor's consent. The court noted that the issue was one of first impression in Arizona. It applied the law of the Restatement of Security (1941) because, absent state law to the contrary, the Arizona courts then usually applied Restatement law. *See Fort Lowell–NSS Ltd. Partnership v. Kelly,* 166 Ariz. 96, 800 P.2d 962 (1990). Division Two applied section 128 of that Restatement, which impliedly states that the surety is not discharged when it consents to modification of the underlying contract but adds that the surety may be discharged when the contract is modified without the surety's consent. The court also noted that in comment g to section 82, the term "guaranty" is used in the Restatement as a synonym for suretyship and the term "guarantor" is used as a synonym for surety.

Comment c to section 128 provides as follows regarding consent:

The consent of the surety to alterations is binding on him whether expressed as part of his obligation, given later but be-

---

1. The second issue in *Westcor,* having to do with the fact that the option to renew was not exercised until after the original lease expired, has no application to this case in which the option was exercised during the term of the original lease.

fore the alteration, or subsequent to the alteration. In the first case he is bound on his contract, in the second he is estopped, and in the third case he has waived his defense. The surety's consent may be either written or oral.

From the foregoing, we conclude that if Cutco consented to an alteration of the lease to allow extensions or consented to exercise the option to renew provided in the original lease, it is estopped to argue that the guaranty does not apply to the extended term.

 Horizon's last argument is that even if the renewal created an entirely new lease not covered by the first clause of the guaranty, the language of the final clause would extend guaranty protection to any subsequent lease between the parties. The clause in question provides that "in no event shall such guarantee extend beyond the sum of $50,000.00 during any consecutive twelve (12) month period for all leases between Cut & Curl, Inc., its subsidiaries, and licensees, as Lessees and J.E.H. Development Co., its subsidiaries and affiliates, as Lessors."

We agree with the trial court that this clause cannot be interpreted as Horizon argues. Agreements which are clear and unambiguous will be enforced according to their terms, and words used will be given their normal meaning. *Korman v. Kieckhefer*, 114 Ariz. 127, 559 P.2d 683 (App.1976). Here, the language in the final clause gives no guarantee. The clause simply limits the total liability arising under the various guaranty agreements made by the parent corporation. This argument does not entitle Horizon to summary judgment.

### CONCLUSION

For the reasons stated, the trial court erred in finding that the noncontinuing guaranty was not enforceable during the extended term if the guarantor later consented to the extension of the lease term. Because an issue of fact exists as to whether Cutco truly consented to the extension, we reverse and remand for further proceedings consistent with this opinion.

CLABORNE, P.J., and McGREGOR, J., concur.