THE SHERWIN-WILLIAMS COMPANY, Plaintiff v. ASBN, INC., d/b/a FISHMARKET RESTAURANT, INC., FISHMARKET RESTAURANT, INC., NATHAN ALBERTY, BETTY D. ALBERTY, MARIA JANDERA, and JOSEPH ZAHRADNICEK, Defendants

No. COA00-753

(Filed 17 July 2001)

**Guaranty— commercial lease—holdover tenancy—lease amendment and extension—signing in capacity as corporate officer**

The trial court did not err in an action seeking damages in connection with a lease of commercial property by affirming summary judgment in favor of defendant Betty Alberty, but it did err by affirming summary judgment in favor of Nathan Alberty, because although the lease amendment and extension executed more than two years after the original lease expired was a new lease which means the defendants' guaranty did not extend to the new lease, a genuine issue of fact existed as to whether defendant Nathan Alberty is estopped from denying the continuance of his personal guaranty based on his signing the lease amendment and extension in his capacity as a corporate officer of the lessee.

Appeal by plaintiff from judgment entered 30 March 2000 by Judge Timothy S. Kincaid in Mecklenburg County Superior Court. Heard in the Court of Appeals 18 April 2001.

*Robert D. Potter, Jr. for plaintiff-appellant.*

*Poyner & Spruill, L.L.P., by Parmele P. Calame, for defendant-appellees Nathan and Betty D. Alberty.*

WALKER, Judge.

Plaintiff initiated this action on 1 June 1999 seeking damages in connection with a lease of commercial property to defendant ASBN, Inc. d/b/a Fishmarket Restaurant (ASBN). Defendants Nathan Alberty and Betty Alberty moved for summary judgment and plaintiff filed a cross-motion for summary judgment against all defendants. After a hearing, the trial court granted plaintiff's motion for summary judgment against ASBN, defendant Jandera and defendant Zahrandnicek. However, the trial court denied plaintiff's motion for summary judg-

ment against the Albertys and instead granted the Albertys' motion for summary judgment.

The facts as presented at this stage of the proceedings show the following: On 24 September 1987, plaintiff leased commercial property on Morrison Boulevard in Charlotte to James Simmons who later assigned his interest to ASBN. Defendant Nathan Alberty is vice-president of ASBN. The lease was for a term of seven years, expiring on 30 December 1994. However, the lease provided both an option to renew at the agreement of both parties and a provision covering the contingency of a hold-over tenancy. The hold-over tenancy provision stated:

## ARTICLE 19.

### HOLD-OVER TENANCY

In the event . . . Tenant remains in possession of the premises without written consent of Lessor, after the expiration of the term of this lease . . . such holding over shall, if the rent is accepted by Lessor for any period after expiration of the term, create a tenancy from year to year at the last annual rental payable hereunder and otherwise upon the terms and conditions of this Lease . . . .

The lease did not contain any language providing for the "extension" of the lease.

In connection with the signing of the lease, the Albertys each signed a personal guaranty assuring the full performance of the lease. The guaranties stated:

The undersigned do(es) hereby waive all requirements of notice of the acceptance of this Guaranty and all requirements of notice of breach or non-performance by Tenant. The undersigned's obligation hereunder shall remain fully binding although Lessor may have waived one or more defaults by Tenant, extended the time of performance by Tenant, modified or amended the Lease . . . .

After the lease expired on 30 December 1994, ASBN continued to occupy the premises as a hold-over tenant. On 28 February 1997, plaintiff and ASBN entered into a "lease agreement and extension" which provided that it was retroactive to 1 January 1995 and was extended to 30 December 1999. Although neither of the Albertys executed a separate personal guaranty of the "lease agreement and

extension," Nathan Alberty signed in his capacity as vice-president of ASBN. ASBN defaulted on the lease after September 1998.

Plaintiff first contends that the trial court erred in granting summary judgment in favor of the Albertys because their obligation as guarantors under the original lease continued for the term of the "lease amendment and extension." Plaintiff asserts that the "lease amendment and extension" was merely an extension of the original lease. As such, the Albertys remained liable because their personal guaranty allows for the modification or amendment of the original lease. Alternatively, plaintiff argues that Nathan Alberty should be estopped from denying the continuance of his personal guaranty because he signed the "lease amendment and extension" in his capacity as vice-president of ASBN. The Albertys counter that their guaranty obligation ended with the expiration of the original lease and the "lease amendment and extension" constituted a new lease which they did not guarantee.

We must first address the question of whether a retroactive lease "extension" executed after the expiration of a lease term constitutes a continuation of the original lease or a new lease. In *O'Grady v. Bank*, 296 N.C. 212, 250 S.E.2d 587 (1978), our Supreme Court held that if a new agreement is substituted without the assent of the guarantor, the guarantor's obligations are terminated. The Albertys urge that we follow the holding in *Westcor Co. Ltd. v. Pickering*, 164 Ariz. 521, 794 P.2d 154 (1990). There, the parties executed a three-year lease for which defendant was a guarantor. *Id.* at 521, 794 P.2d at 154. The lease included an option to renew; however, the option was not exercised prior to the expiration of the lease. *Id.* at 522, 794 P.2d at 155. Instead, the lessee continued to occupy the premises as a holdover tenant. *Id.* One month after the expiration of the lease, plaintiff and lessee executed a three-year "renewal," retroactive to the expiration of the original lease, on which the lessee later defaulted. *Id.* In holding the defendant was not obligated under the lease renewal, the Arizona court held that "a guaranty of the performance of a written lease for a specific term does not continue into a successive term . . . without the express terms to show that the lease was of a continuing nature." *Id.* at 523, 794 P.2d at 156. Further, the parties to the lease could not continue the guarantor's obligation by retroactively granting an "extension" of the option to renew after the expiration of the original lease. *Westcor* at 525, 794 P.2d at 158. Rather, the Arizona court found that "[a]n extension of time given after the lease term has expired is not actually an extension," but a new lease. *Id.* Although

the guaranty provision in *Westcor* did not stipulate the guarantor's continued liability in the event of the modification, alteration or renewal of the underlying lease, the Arizona court stated, "[E]ven if the guarantee covered renewal, the subsequent 'renewal' did not recreate any obligations on the part of the guarantor. The renewal was in fact a new lease contract." *Id.* at 524, 794 P.2d at 157.

Plaintiff argues that the case at bar is distinguishable from *Westcor* in that the original lease provided that the Albertys' obligation would remain even though "Lessor may have waived one or more defaults by the Tenant, extended the time of performance by Tenant, modified or amended the lease . . . ." This provision in the original lease only serves to bind the Albertys if limited modifications were made. This Court has found that guarantors may remain obligated where there is an extension of the term of an agreement; however, the guarantors must have unambiguously agreed to continue their liability in such an event. *See First Citizens Bank & Trust Co. v. McLamb*, 112 N.C. App. 645, 439 S.E.2d 166 (1993) (holding that guarantors remained liable despite extension of time to perform where the guaranty agreement provided they would "remain bound . . . notwithstanding any . . . renewal or extension.") Assuming *arguendo* that the "lease amendment and extension" was an extension of the original lease and not a new lease, we do not believe the Albertys' waiver of modifications to the lease is sufficiently broad as to unambiguously encompass a retroactive extension of the original lease term.

Furthermore, we find the reasoning of the Arizona Court, in finding the "renewal" was actually a new lease, to be persuasive. Here, ASBN did not exercise its option to renew the lease but continued to occupy the premises as a hold-over tenant. More than two years after the original lease expired, plaintiff and ASBN then executed the "lease amendment and extension," which provided it would be retroactive to 1 January 1995. However, the original lease was silent on whether it could be extended. Therefore, we conclude the "lease amendment and extension" executed more than two years after the original lease expired was a new lease. In the absence of a new guaranty by the Albertys, they cannot be held liable.

Although we have determined the Albertys' guaranty does not extend to the new lease, plaintiff alternatively argues that Nathan Alberty should be estopped from denying the continuance of his personal guaranty because he signed the "lease amendment and extension" in his capacity as vice-president of ASBN.

In *Devereux Properties, Inc. v. BBM&W, Inc.*, 114 N.C. App. 621, 442 S.E.2d 555 (1994), the guarantors to a lease argued that their liability had been discharged after the lease was amended. Although the guarantee agreement did not provide for continuing liability in the event of such modifications, the guarantors consented to the amendments in their capacity as corporate officers of the lessee. *Devereux* at 622, 442 S.E.2d at 556. This Court noted the general rule that "a material alteration of a contract between a principal debtor and creditor without the consent of the guarantor discharges the guarantor of his obligation." *Devereux* at 623, 442 S.E.2d at 556. However, this Court also held that "[a]n exception to these rules holds the guarantor responsible for any changes to which he has either expressly or impliedly consented." Devereaux at 624, 442 S.E.2d at 556. Further, "[c]onsent to an increase in liability may be implied from a guarantor's actions as a corporate officer." *Devereux* at 624, 442 S.E.2d at 557. In holding the guarantors were estopped from denying responsibility for the modifications, this Court explained that the guarantors "were not innocent parties; they were experienced businessmen who stood to benefit from the modifications. Having authorized the modifications and received their benefits, they cannot now be regarded as innocent third parties such as the law of guaranty is designed to protect." *Devereux* at 625, 442 S.E.2d at 557.

Likewise, Nathan Alberty, as vice-president of ASBN, could have benefitted from the new lease which allowed his business to continue in its present location. Based on our review of the record, we cannot conclude as a matter of law that Nathan Alberty is estopped from denying his personal guaranty continued under the new lease. This issue must be addressed and reviewed by the trial court.

The judgment of the trial court is affirmed as to Betty Alberty. The judgment is reversed as to Nathan Alberty.

Affirmed in part; reversed and remanded in part.

Judges HUNTER and TYSON concur.