This case is now before us on a petition to rehear, having been decided in 126 N.C. 450. The facts are sufficiently set forth in the former opinion, to which, after careful consideration, we feel it our duty to adhere. The decisive question was, whether the contract for the extension of payment operated as a discharge of the debt as far as Mrs. (215) Brown was concerned. We think it did. In Hinton v.Greenleaf, 113 N.C. 6, this Court says: "It is settled by abundant authority that, `where a husband mortgages his property for his debt, and in the same mortgage the wife conveys her own separate property as security for the same debt, her property so conveyed will he treated in all respects as a surety, and will be discharged by anything that would discharge a surety or guarantor who was personally liable. * * * These contracts of forbearance were made without the knowledge or assent of Mrs. Greenleaf, and, in our opinion, resulted in a discharge of her property from all liability under the said deed of trust. This property occupied, as we have seen, the position of a surety, and it is common learning that time or forbearance given by a contract which binds him in law and would bar his action against the debtor will discharge the surety.'" This case cites a large number of authorities, and is cited with *Page 146 
approval in Weil v. Thomas, 114 N.C. 197, 201; Smith v. Association,119 N.C. 257; Hedrick v. Byerly, 119 N.C. 420;Shew v. Call, 119 N.C. 450, 55; Meares v. Butler, 123 N.C. 206,208. It is needless here to recapitulate all the authorities cited in the above-named cases. It is contended in behalf of the defendant that, as the contract of forbearance was made upon a usurious consideration after the passage of the act of 1876-77, brought forward as section 3836 of The Code, the said contract was absolutely void and of no effect, either as to binding the creditor or releasing the surety. We can not adopt this view of the matter in the face of the repeated decisions of this Court to the contrary. In Forbes v. Sheppard, 98 N.C. 111, this Court says (on page 115): "The exoneration of the surety is the same when the contract of forbearance is usurious in terms, and especially when the consideration has been (216) paid;" citing Scott v. Harris, 76 N.C. 205; Bank v. Lineberger, 83 N.C. 454, modified in Carter v. Duncan,84 N.C. 679; Brandt Sur., sec. 304; Baylies Sur., 251. InHollingsworth v. Tomlinson, 108 N.C. 215, this Court says: "So it is now well settled that `the exoneration of the surety is the same when the contract of forbearance is usurious in terms, and especially when the consideration has been paid.' As far as the surety is concerned, his exoneration by the creditor's contract of forbearance with the principal has the same effect as if the debt had been paid; that is, the debt is canceled as to him. As the wife's land under mortgage for her husband's debt stands simply in the relation of surety, as to it the debt is extinguished. There is a dear distinction between the extinguishment of the debt and the bar to its collection raised by the statute of limitations. We are, therefore, brought to the question, whether the extinguishment of the debt destroys the mortgagee's power of sole. We think it does. The mortgage is not the debt itself, but merely incidental thereto. It is intended merely to secure the payment of the debt, and when the debt is paid its object is fulfilled. It is true the legal title passes to the mortgagee, but only for the purposes of the mortgage as expressed upon its face. If the debt is paid before maturity, the title reverts by the very terms of the mortgage, which thereupon becomes null and void. After default the debtor still retains his equity of redemption, and upon payment of the debt before foreclosure, is entitled to a reconveyance of the legal title. If the mortgagee still retains the title, he holds it as a naked trustee for the mortgagor. Even while the mortgage is in full force and effect, the mortgagee with power of sale holds the land as trustee for the mortgagor as well as *Page 147 
for himself. Bobbitt v. Blackwell, 120 N.C. 253, (217) and cases therein cited. The practice of inserting powers of sale in mortgages was recognized by this Court with great reluctance, and has always been regarded with extreme jealousy, hut not now with the same disfavor. Kornegay v.Spicer, 76 N.C. 95; Whitehead v. Hellen, Id., 90; Mosby v.Hodge, Id., 387; Shew v. Call, 119 N.C. 450. In Capehartv. Biggs, 77 N.C. 261, this Court says: "In our case the plaintiff might invalidate a sale made under the power by proof that nothing was due under the mortgages, and so the power was defunct." In Hutaff v. Adrian, 112 N.C. 260, this Court says: "Upon the allegations in the complaint taken as true, the defendant's bond and mortgage are alike barred by the statute of limitations. A sale under such mortgage would carry to the purchaser no title." In Jenkins v. Daniel, 125 N.C. 161, this Court says, on page 168, 125 N.C. page 240: "The extension of time without the consent of the surety discharges the surety, or the security given by a third party;" citingBank v. Sumner, 119 N.C. 501; Sutton v. Walters, 118 N.C. 495. "This presents the question whether the mortgage of February, 1890, extended the time of payment of the note. * * * If it does, it was a discharge of the lien of the mortgage of the wife on her land. The mortgagee would have no right to sell under the same, and the defendant Speight would acquire no title by reason of said sole and her purchase." In the case at bar, as the lien upon the land had been discharged, the defendant's vendor purchasing at the mortgagee's sale acquired no title whatever, either legal or equitable, and hence could convey none to her. It matters not to her where the legal title may now be, since it is not in her. Whether it reverted to the plaintiffs or remained in the mortgage as their naked trustee does not affect the merits of this action. We are not inadvertent to certain authorities, which hold that a purchaser in good faith has a right to presume that (218) an uncanceled mortgage is still in full force. This doctrine, whether right or wrong. has no application here. However it may be presented. it finally rests upon the doctrine of estoppel. Are infant children estopped by a mere failure to assert their rights, of which they have no knowledge? We think not. They would not be affected even with actual notice, except, perhaps, in some rare instances, where their conduct would amount to actual fraud.
It is suggested that this is a case of conflicting equities, which should he resolved in favor of the defendant in possession; but we see no conflicting equities. Whatever may be the *Page 148 
equitable rights of the defendant, they do not conflict with those of the plaintiffs, because she has no equities against the plaintiffs. None of her money went to them, nor did it go to pay their debt, or exonerate their property. They never owed the debt, and their land had been exonerated by operation of law before it was bought by the defendant, or even sold by the mortgagee. If she has any equities, by subrogation, or otherwise — and that question is not before us — it seems to us that they must be against either the father, whose debt she paid, or those who received her money. What legal rights she may have against her vendor we have no means of knowing. This may seem a hard rule, and we frankly admit that we have carried it as far as we care to go; but so far we must go in deference to the settled decisions of this Court, and in justice to the trusting wife and helpless children. Perceiving no error in our former judgment, the petition to rehear is dismissed.
We do not think that a motion for a new trial for newly-discovered evidence is properly before us on a petition to rehear, even if due diligence had been shown.
Petition dismissed.
Cited: Smith v. Parker, 131 N.C. 471; Vann v. Edwards, 135 N.C. 676.
(219)