DOROTHY H. LOVE v. BACHE & CO., INC.

No. 7826SC537

(Filed 3 April 1979)

1. **Banks and Banking § 13; Guaranty § 2; Pledges § 2— guaranty of loan—securities as collateral for loan—sale of securities—application to loans—consent by owner of securities not necessary**

    Under the terms of a guaranty by which plaintiff's testator became a primary obligor on any indebtedness of a corporation to a bank, and under the terms of hypothecation agreements authorizing an individual to pledge certain securities owned by plaintiff's testator as collateral for any indebtedness of the individual to the bank, plaintiff's consent was unnecessary to extensions of time for payment of the secured debts or for payment of the proceeds from the sale of the testator's securities held by the bank to satisfy the debts of the corporation and the individual to the bank.

2. **Guaranty § 1— death of guarantor—no revocation of guaranty**

    Guaranty agreements were not revoked by the death of the guarantor.

APPEAL by plaintiff from *D. I. Smith, Judge.* Judgment entered 22 February 1978 and order denying relief entered 6 June 1978 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 7 March 1979.

On 1 October 1970, plaintiff's testator, Hal J. Love, executed a Guaranty to defendant American Bank & Trust Company (American) by the terms of which he became a primary obligor on any indebtedness to American incurred by International Speedways, Inc. (Speedways). On 25 March 1973 and 23 January 1975 Love executed Hypothecation Agreements authorizing one Ernest L. Harris to pledge named securities belonging to Love (including 3200 shares of Holiday Inns, Inc. common stock and an $11,000 debenture) as collateral for any indebtedness to American incurred by Harris. Love died on 7 February 1975, and, according to American, a few days later

> Mr. Ray [attorney for the estate] was informed that the bank was not calling the various loans, that the bank would cooperate with the estate in the orderly settlements of its affairs, and that, if interest payments could be kept current, principal payments would be waived for at least six months.

The renewals of which plaintiff complains were accomplished in the same way: "simply by accepting interest due on all outstand-

ing loans. No new instruments were required of the borrower, and the original note was retained." Subsequently defendant Bache & Co., Inc. (Bache), a stock brokerage firm, sold the 3200 shares of Holiday Inns, Inc. stock and the $11,000 debenture owned by Love. The net proceeds of this sale, $39,150.54, were paid by Bache to American and used by it to satisfy the Harris and Speedways debts.

Plaintiff seeks to recover the sale proceeds from either defendant. The actions against the separate defendants were consolidated on defendant Bache's motion. The trial court granted summary judgment for the defendants, and plaintiff gave notice of appeal and then moved to have the judgment set aside. The court determined that because of plaintiff's notice of appeal jurisdiction was then in the Court of Appeals, and that if jurisdiction was in the trial court the motion was denied. From the entry of summary judgment and the denial of her motion plaintiff appeals.

*Charles T. Myers for plaintiff appellant.*

*Fleming, Robinson & Bradshaw, by Richard A. Vinroot, for defendant appellee Bache & Co., Inc.; Robert L. Holland for defendant appellee American Bank & Trust Company.*

ARNOLD, Judge.

[1] Summary judgment must not be granted if there exists a genuine issue of material fact. G.S. 1A-1, Rule 56(c). Plaintiff contends that the issues of material fact here are (1) whether she consented to extensions of time for payment of the secured debts, and (2) whether she agreed that the proceeds of the sale of the securities would be paid to American to satisfy the debts. Defendants contend that these issues of fact are not material, since the effect of extensions and the disposition of collateral are controlled by the terms of the Guaranty and Hypothecation Agreements.

We find defendants' position correct. The Guaranty by its terms made Love primarily liable on any indebtedness of Speedways to American, "including all renewals, extensions and modifications." The Guaranty allows for revocation by Love, but provides that such revocation shall not release Love as guarantor from liability for any debts guaranteed at the time of revocation,

or renewals or extensions of the guaranteed debts, "whether such renewals or extensions are made before or after such revocation." Plaintiff's argument that her consent to renewals or extensions of guaranteed Speedways obligations was required at the time of the extension or renewal is negatived by the terms of the Guaranty itself. Thus the issue of whether she actually gave such consent is immaterial.

Likewise, the Hypothecation Agreements offered Love's named securities as collateral for "any present or future indebtedness" of Harris, "or any extension or renewal thereof," Love "hereby consenting to the extension or renewal . . . of any such indebtedness . . . and waiving any notice of any such . . . extension or renewal." No further consent by plaintiff was required. "A guarantor is bound by an agreement in the guaranty contract which permits extensions of time. . . . [A]n extension of time within the intent of the agreement does not discharge the guarantor." 38 Am. Jur. 2d, Guaranty § 94 at 1100.

We also find immaterial the issue of whether plaintiff consented to the use of the sale proceeds to satisfy the Harris and Speedways debts. The Guaranty gave American a lien on "all . . . securities of the [guarantor] at any time in [American's] possession," allowing American to hold, administer and dispose of the securities as collateral. It is undisputed that American held the stocks and debenture, so they were under lien, and their disposition with regard to the Speedways debt was controlled by the Guaranty. See G.S. 25-9-201, 25-9-207(4). No consent by plaintiff was necessary. Similarly, by the Hypothecation Agreement Love agreed that the named securities (the 3200 shares of Holiday Inns and the $11,000 debenture) "shall be subject to disposition in accordance with the terms and conditions of the instruments evidencing [Harris'] indebtedness." The Harris note, in turn, gave the Bank full authority, in case of default, to sell the collateral at public or private sale and apply the proceeds to the payment of the secured liability. Thus American was clearly within its rights under the Agreement in applying the proceeds of sale to the Harris debt, and whether plaintiff consented is not a material question.

Plaintiff's argument that defendants have failed to establish that the securities which were sold had actually been pledged to

secure the Harris debt does not prevail. J. W. Adams, an officer of American, in answer to plaintiff's interrogatories filed 17 November 1976, indicated that "[t]he [Hypothecation Agreements] were in connection with a loan to Ernest Harris of $25,000.00," and that the named securities "were pledged as security for said loan by the decedent."

[2] We find no merit in plaintiff's contention that Love's death somehow affected the validity of the agreements. The Guaranty explicitly states that it binds Love's "heirs, executors, legal representatives, successors and assigns." Love's liability on both the Harris and Speedways debts was already fixed at the time of his death, and a guaranty contract, as opposed to an offer of guaranty, is not revoked by the death of the guarantor. See generally 38 Am. Jur. 2d, Guaranty § 69.

We have considered plaintiff's other assignments of error and we find that they are groundless. Summary judgment for defendant is

Affirmed.

Chief Judge MORRIS and Judge CLARK concur.