FIRST CITIZENS BANK & TRUST COMPANY, PLAINTIFF v. PHILLIP C. McLAMB, KATHY S. McLAMB, JAMES B. RIVENBARK, ELAINE N. RIVENBARK, HAROLD E. BRYANT, DONNA G. BRYANT, BENJAMIN F. CLIFTON, JR., AND KATHERINE CLIFTON, DEFENDANTS

No. 9211SC762

(Filed 16 November 1993)

**1. Guaranty § 17 (NCI4th) — guaranty agreement — extension of notes — no discharge**

A material alteration of a contract between a principal debtor and creditor without a guarantor's consent will discharge the guarantor. There was no genuine issue of fact here as to the discharge of defendant-guarantors by the extension of notes where the guaranty agreement and the notes provided that such modifications will not discharge defendants from liability.

**Am Jur 2d, Guaranty §§ 79-96.**

**2. Principal and Surety § 3 (NCI4th) — gratuitous sureties — duty of creditor to notify guarantors**

The argument of defendant-guarantors in an action on notes that the bank had a duty to notify them that the purported extended continuing guaranty agreements were in fact surety contracts was meritless because nothing in the record reveals that the bank was aware that the contract was anything other than a continuing guaranty agreement. The record does not show that the bank was attempting to deceive or mislead defendants.

**Am Jur 2d, Suretyship §§ 24-30.**

**3. Pleadings § 289 (NCI4th) — counterclaim — set forth in affidavit — not proper form**

The trial court was not at liberty to consider a counterclaim set forth in an affidavit. Counterclaims are required to be set forth in pleadings. N.C.G.S. § 1A-1, Rule 13.

**Am Jur 2d, Counterclaim, Recoupment, and Setoff §§ 141-143.**

Appeal by defendants from judgment entered 29 April 1992 by Judge Robert L. Farmer in Johnston County Superior Court. Heard in the Court of Appeals 10 June 1993.

STATEMENT OF THE FACTS

On 13 March 1990, Johnston County Motorcars, Inc., d/b/a Smithfield Ford-Lincoln-Mercury (Smithfield F-L-M) executed a note in favor of plaintiff First Citizens Bank & Trust. The note was due and payable in full on 1 May 1990 and was secured by collateral of all inventory of parts now owned or hereinafter acquired, tangible and intangible property, equipment, furniture, fixtures and all outside lights, and all receivables including those from Ford Motor Company. On 20 August 1990, Smithfield F-L-M executed a note modification agreement with plaintiff for the 13 March 1990 note in the amount of $67,500.00. The note modification agreement stated that the note and said amount would be due and payable in full on 19 October 1990. Smithfield F-L-M executed an additional note modification agreement with plaintiff for the 13 March 1990 note in the amount of $67,500.00. Said note modification agreement stated that the balance due on the 13 March 1990 note as of said date was $61,050.67 and that the note was due and payable in 35 monthly installments of $2,035.13 beginning on 1 January 1991 with the balance of principal and interest to be due on 1 December 1993.

On 13 March 1990, defendants Phillip C. McLamb and Kathy S. McLamb executed an Unconditional Continuing Guaranty Agreement in favor of plaintiff in connection with the note of Smithfield F-L-M dated 13 March 1990. On 13 March 1990, defendants James B. Rivenbark and Elaine N. Rivenbark executed an Unconditional Continuing Guaranty Agreement in favor of plaintiff in connection with the note of Smithfield F-L-M dated 13 March 1990.

Smithfield F-L-M subsequently defaulted on the $67,500.00 note. Thereafter, plaintiff demanded payment from defendants McLambs and Rivenbarks pursuant to the terms of the $67,500.00 note and the aforementioned Unconditional Continuing Guaranties. Defendants refused to pay the indebtedness.

Bad Checks

On 8 May 1991, Smithfield F-L-M made two payments to plaintiff, the first in the amount of $3,397.05 and the second in the amount of $3,749.97. The payments were in the form of checks

and were returned marked "insufficient funds." Pursuant to the aforementioned Unconditional Continuing Guaranties executed by defendants, Phillip C. McLamb, Kathy S. McLamb, James B. Rivenbark and Elaine N. Rivenbark on 13 March 1990, where the defendants agreed to guarantee payment of all liabilities and obligations, demand was made for payment of the two checks. Defendants refused to pay the indebtedness.

## The $150,000.00 Note

On 15 November 1989, defendants Phillip C. McLamb and Kathy S. McLamb executed a note in the amount of $150,000.00 in favor of plaintiff. The note was due and payable in 11 monthly installments of $4,946.12 with the first payment being due and payable on 15 December 1989 and the last payment of all principal and interest due to be made on 15 November 1990. On 20 November 1990, defendants Phillip C. McLamb and Kathy S. McLamb executed a note modification agreement in favor of plaintiff on the aforementioned 15 November 1989 note in the amount of $150,000.00. The balance due on the $150,000.00 note dated 15 November 1989 was $117,928.40 as of 20 November 1990 and was to be paid in 35 monthly installments of $3,931.14, the first payment being due and payable on 1 January 1991 with a final payment of all principal and interest due on 1 December 1993.

On 15 November 1989, defendants James B. Rivenbark and Elaine N. Rivenbark executed an Unconditional Continuing Guaranty Agreement in favor of plaintiff for the 15 November 1989 note executed by defendants Phillip C. McLamb and Kathy S. McLamb in the amount of $150,000.00. Defendants McLambs and Rivenbarks defaulted on their obligation due and owing plaintiff pursuant to the terms of the $150,000.00 note and Unconditional Continuing Guaranty. Plaintiff made a demand upon defendants who refused to pay the indebtedness.

## The $174,054.44 Note

On 1 May 1990, defendants McLambs, defendants Rivenbarks and defendants Benjamin F. Clifton, Jr. and Katherine Clifton executed and delivered to plaintiff a note in the amount of $174,054.44. The aforementioned defendants defaulted on their obligation due and owing plaintiff pursuant to the terms of the $174,054.44 note. Plaintiff made a demand for sums due and owing. Defendants again refused to pay the indebtedness.

Litigation

On 9 October 1992, plaintiff filed its complaint against defendants Phillip C. McLamb, Kathy S. McLamb, James B. Rivenbark, Elaine N. Rivenbark, Harold E. Bryant, Donna G. Bryant, Benjamin F. Clifton, Jr. and Katherine Clifton, who as guarantors and makers of various notes due and owing plaintiff, were in default of their obligations.

On 3 March 1992, defendants Phillip C. McLamb, Kathy S. McLamb, James B. Rivenbark and Elaine N. Rivenbark answered and filed motions to dismiss in this action. On 19 March 1992, plaintiff filed a notice of hearing indicating that it wished to hear the defendants' motions to dismiss. On 20 March 1992, plaintiff filed an affidavit in support of a motion. On 25 March 1992, plaintiff filed a motion for partial summary judgment. On 24 April 1992, defendant James B. Rivenbark filed an affidavit in support of the various motions to dismiss filed by defendants and in response to plaintiff's motion for summary judgment.

On 27 April 1992, this matter came on to be heard by Judge Farmer who granted plaintiff's motion for partial summary judgment. The trial court also held the defendants' motions to dismiss were moot by its judgment which granted plaintiff's partial summary judgment motion. Defendants McLambs and Rivenbarks filed notice of appeal with this Court.

*Ward and Smith, P.A., by Michael P. Flanagan and Louise W. Flanagan, for plaintiff-appellee.*

*Battle, Winslow, Scott & Wiley, by Joseph N. Calloway, for defendants-appellants.*

JOHNSON, Judge.

Summary judgment must not be granted if there exists a genuine issue of material fact. North Carolina General Statutes § 1A-1, Rule 56(c) (1990). Defendants' contend that the issues of material fact are (1) whether the agreement was actually a surety contract or a guaranty agreement and (2) whether the contract was materially altered so as to release them from their obligation. Plaintiff contends that these issues of fact are not material since the terms of the agreement signed by defendants allow plaintiff to enter into note modifications, such as an extension of time, with the defendants' full assent.

FIRST CITIZENS BANK & TRUST CO. v. McLAMB

[112 N.C. App. 645 (1993)]

**[1]** Although defendants correctly argue that North Carolina law states that as a general rule, material alterations of a contract between a principal and a creditor will operate to discharge a surety, *Fleming v. Bordon*, 127 N.C. 214, 37 S.E. 219 (1900), we also find that a material alteration of a contract between a principal debtor and creditor without a guarantor's consent will discharge the guarantor from its obligation. North Carolina General Statutes § 25-3-606 (1987). Therefore, the dispositive issue is not whether the contract is a surety contract or a guaranty agreement but whether there was a material alteration so as to discharge defendants from their obligation. Labels are not necessarily binding. It is the substance of the transaction that controls. *Gillespie v. DeWitt*, 53 N.C. App. 252, 258, 280 S.E.2d 736, 741, *cert. denied*, 304 N.C. 390, 285 S.E.2d 832 (1981). In the instant case, the agreement and the notes by their terms guaranteed the debts of Smithfield F-L-M to plaintiff. The Unconditional Continuing Guaranty Agreement provides that the signatory has consented to, among other things, that plaintiff:

> [M]ay at any time, or from time to time, in its sole discretion; (i) extend or exchange the time of payment, and/or any manner, place or terms of payment of any or all of the 'Obligations of Borrower'; . . . and in such manner and upon such terms as BANK may deem proper and/or desirable, and without notice to further assent from GUARANTOR, it being agreed that GUARANTOR shall be and remain bound upon this Unconditional Guaranty . . . notwithstanding any such change, exchange, settlement, compromise, surrender, release, sale or other disposition, application, renewal or extension[.]

Contained within the terms of both the $67,500.00 note and $150,000.00 note are provisions which clearly constitute waiver of any extension of time for payment, or notice thereof:

> All parties to this note, whether maker, guarantor, surety, or endorser, hereby waive presentment for payment, demand, protest, notice of protest, nonpayment, and dishonor, agree that any extension of time for the payment of this note shall not affect the liability of such parties, and hereby waive all notice of such extension[.]

The agreement as stated allows for extensions of time and other modifications, but provides that such modifications will not discharge defendants from liability for any debts guaranteed. "Where the

language of a contract is plain and unambiguous, construction of the agreement is a matter of law; and the court may not ignore or delete any of its provisions, nor insert words into it, but must construe the contract as written, in light of the undisputed evidence as to the custom, usage and meaning of its terms." *Martin v. Martin*, 26 N.C. App. 506, 508, 216 S.E.2d 456, 457-58 (1975). Where the language of a contract of guaranty, or one of suretyship, provides that the signatory has made him or herself liable for all renewals, extensions and modifications and a renewal, extension or modification occurs, the signatory is bound by the terms of the agreement and will not be discharged from his or her liability. *Love v. Bache & Co.*, 40 N.C. App. 617, 253 S.E.2d 351 (1979); *Trust Co. v. Creasy*, 301 N.C. 44, 269 S.E.2d 117 (1980).

By executing the agreement, defendants clearly waived any defense of discharge due to the extension of the notes. We agree with the trial court that there was no genuine issue of fact.

[2] We also note defendants' argument that the bank had a duty to notify the guarantors that the purported extended continuing guaranty agreements were in fact surety contracts and that the words were not binding without ratification because these were surety contracts and defendants were gratuitous sureties.

A surety is in general a friend of the principal debtor, acting at his request, and not at the request of the creditor; and, in ordinary cases, it may be assumed that the surety obtains from the principal all of the information which he requires. This is the applicable rule unless there is some fact, which the creditor knows the surety probably will not discover, of such vital importance to the risk that the creditor must have been aware that the non-disclosure would in effect amount to a contrary representation to the surety. *Construction Co. v. Crain and Denbo, Inc.*, 256 N.C. 110, 123 S.E.2d 590 (1962).

Nothing in the record reveals the bank was aware that the contract was anything other than an Unconditional Continuing Guaranty Agreement. The record does not show that the bank was attempting to deceive or misled defendants when defendants signed the Unconditional Continuing Guaranty Agreement. As such, we find defendants' argument meritless.

[3] Lastly, defendants argue that the court failed to consider James B. Rivenbark's counterclaim that was set out in his affidavit. North

Carolina Rules of Civil Procedure require that a counterclaim shall be set forth in a pleading. N.C.R. Civ. P. 13. As an affidavit is not a pleading, the court was not at liberty to consider a counterclaim that was not in its proper procedural form. N.C.R. Civ. P. 7.

We affirm the decision of the trial court.

Judges GREENE and WYNN concur.