**Affirmed in Part, Reversed in Part, and Remanded, and Memorandum Opinion filed March 3, 2022.**



In The

# Fourteenth Court of Appeals

## NO. 14-20-00179-CV

### FIRST-CITIZENS BANK & TRUST COMPANY, Appellant

### V.

### DR. RICHARD FRANCIS, DR. YUEH LEE, AND DR. SHERMAN NAGLER, Appellees

### and

### DR. RICHARD FRANCIS, Appellant

### V.

### FIRST-CITIZENS BANK & TRUST COMPANY, Appellee

**On Appeal from the 151st District Court
Harris County, Texas
Trial Court Cause No. 2017-62467**

**MEMORANDUM OPINION**

Appellant First-Citizens Bank & Trust Company (First-Citizens) appeals a final judgment in its favor on its claims under a lease guaranty signed by appellees Dr. Richard Francis, Dr. Yueh Lee, and Dr. Sherman Nagler (doctors). After a bench trial, the trial court awarded First-Citizens $20,809.44 on its claims against the doctors, along with attorney's fees. In four issues, First-Citizens argues the trial court reversibly erred by: denying its summary-judgment motion and rendering partial summary judgment that First-Citizens take nothing on a portion of its lease-guaranty claim (issue 1); rendering judgment following a bench trial awarding First-Citizens an amount less than the total amount First-Citizens sought by its lease-guaranty claim (issues 2 and 3); and rendering a take-nothing judgment on First-Citizens's claim to enforce a separate credit-card guaranty (issue 4). Francis brings a separate appeal arguing the trial court reversibly erred by awarding any recovery to appellee First-Citizens under the lease guaranty. We reverse the trial court's judgment as to the lease guaranty, affirm the judgment as to the credit guaranty, and remand the case for further proceedings.

## I. BACKGROUND

First-Citizens signed a master lease agreement (lease) with Excellence Medical Group, LLC (EMG). Under the terms of the agreement, First-Citizens agreed to lease equipment to EMG.[1] The lease contemplated that other documents, including equipment schedules, would be incorporated into the terms of the lease.

Francis, Lee, and Nagler each signed an unconditional guaranty concerning the lease (lease guaranty), which provided in part that:

> To induce [First-Citizens] to enter into the Lease, each Guarantor unconditionally guarantees to [First-Citizens], jointly and severally,

---

[1] The trial court's findings of fact describe the agreement as "involving the lease of medical equipment."

2

the due and punctual payment of all liabilities and obligations of [EMG] under the Lease as, when, and however the same shall become due.

. . . .

The provisions of the Lease including any amendments, modifications, extensions, and renewals thereof are hereby consented to by Guarantor without the necessity of giving Guarantor notice thereof and incorporated into this Guaranty by reference and made a part of this Guaranty as if fully set out herein, and Guarantors are and shall be bound by all of the provisions thereof, including the agreements, waivers, and obligations set forth therein.

First-Citizens and a representative of EMG later signed two documents on the same day: (1) an equipment schedule (schedule) showing EMG owed 84 monthly rent payments of $15,793.27, of which $31,586.54 had been paid in advance, and (2) a Texas lease addendum (addendum) that, among other things, specified an interest rate of 3.25% "[i]f this Lease and the transactions contemplated hereunder are intended to be a loan . . . or a court or other tribunal of competent jurisdiction has declared that this Lease is a loan rather than a lease[.]" Both the schedule and the addendum reference the lease by document number and further reference the terms of the lease, with the schedule stating it incorporates the terms of the lease and the addendum stating it is cumulative of the terms of the lease.

First-Citizens sued Francis, Lee, and Nagler, alleging EMG had defaulted on payments due under the lease and related documents and the doctors were liable for the default under the lease guaranty. First-Citizens also sought to hold the doctors liable on a credit-card guaranty they signed (credit guaranty) covering "all obligations of [EMG] arising from the credit card account(s) with [First-Citizens]."

First-Citizens moved for summary judgment on the lease and credit guaranties. Francis moved for partial summary judgment on the lease guaranty,

3

arguing that no liability was incurred under that guaranty. After the summary-judgment deadline passed, Lee and Nagler filed a motion to join Francis's partial summary-judgment motion, in which they also argued the lease guaranty did not cover funds distributed to third party Genex Laboratories, LLC, which the trial court's findings describe as a separate entity from EMG. The trial court denied First-Citizens's summary-judgment motion and rendered partial summary judgment that First-Citizens take nothing as to "any amounts disbursed to Genex or for any interest thereon."

After a bench trial, the trial court signed a final judgment awarding First-Citizens $20,809.44 and $165,000 in attorney's fees, specifying additional fees in the event of unsuccessful appeals by the doctors. According to the trial court's findings of fact and conclusions of law, the damages were based on First-Citizens's lease-guaranty claim; the trial court determined First-Citizens was not entitled to recovery on its credit-guaranty claim.

## II. ANALYSIS

### A. Choice of law

We first address choice of law. In conclusion of law 2, the trial court concluded North Carolina law applies to this dispute, as specified in the lease, the lease guaranty, and the addendum. The parties do not contest this conclusion, and accordingly we apply the substantive law of North Carolina to this appeal.[2] As to

---

[2] First-Citizens asserts no conflict exists between North Carolina and Texas law on the issues raised in this appeal and resolution of the choice-of-law question is unnecessary. The trial court, however, did resolve this issue, and concluded North Carolina law applies. *Cf.* Tex. R. Evid. 202(b)(1) (court may take judicial notice of another state's law "on its own"); *Pittsburgh Corning Corp. v. Walters*, 1 S.W.3d 759, 769 (Tex. App.—Corpus Christi 1999, pet. denied) ("The court may undertake a choice of law analysis sua sponte[.]"). Because First-Citizens does not challenge the trial court's conclusion that North Carolina law applies, we will not disturb that conclusion. *See* Tex. R. App. P. 33.1(a).

4

procedural matters, we apply the law of Texas. *See In re Mahindra, USA Inc.*, 549 S.W.3d 541, 547 (Tex. 2018) (orig. proceeding) ("Choice-of-law principles may dictate that the substantive law of another jurisdiction should apply, but it does not govern matters of procedure in the forum state.").

## B. Summary-judgment orders

In issue 1, First-Citizens argues the trial court reversibly erred by granting partial summary judgment in the doctors' favor and denying First-Citizens's summary-judgment motion.

### 1. Partial summary judgment in the doctors' favor

First-Citizens argues the trial court reversibly erred by rendering partial summary judgment that First-Citizens take nothing by its lease-guaranty claim as to "any amounts disbursed to Genex or for any interest thereon." We may review this interlocutory order, which merged with the trial court's final judgment. *See Webb v. Jorns*, 488 S.W.2d 407, 408–09 (Tex. 1972) (holding interlocutory judgment merged into final judgment, which was then appealable).

The trial court's partial summary judgment references two motions: (1) Francis's summary-judgment motion and (2) Lee and Nagler's motion to join Francis's motion. In his summary-judgment motion, Francis argued First-Citizens's lease-guaranty claim was wholly meritless because "the undisputed evidence establishes that the agreement under which Plaintiff operated was not the Original Equipment Lease guaranteed by Dr. Francis, but rather was a separate, new transaction." After the summary-judgment deadline, Lee and Nagler filed a motion to join Francis's summary-judgment motion which also presented a new argument: First-Citizens "disbursed the majority of funds" to Genex, and the doctors' guaranty, which referenced only EMG, did not cover funds disbursed to

5

Genex.

In its partial summary judgment, the trial court "ORDERED that Dr. Richard Francis's Cross-Motion for Summary Judgment and Dr. Yueh Lee and Dr. Sherman Nagler's Joinder are GRANTED IN PART, and that Francis, Lee and Nagler are not liable for any amounts disbursed to Genex or for any interest thereon." This language indicates the trial court rendered partial summary judgment on a ground raised in Lee and Nagler's joinder motion, which discussed funds disbursed to Genex, and not Francis's summary-judgment motion, which did not raise that ground.

This is a meaningful distinction in summary-judgment practice. In *McConnell v. Southside Independent School District*, the supreme court held that grounds raised not in a summary-judgment motion but in a contemporaneously filed brief in support of the motion may not serve as a basis for summary judgment under the plain language of Rule 166a(c). 858 S.W.2d 337, 340–41 (Tex. 1993) (discussing Tex. R. Civ. P. 166a(c)). The court explained the "rigorous" requirements of the rule:

> If this court intended Rule 166a(c) to permit a summary judgment movant to place, or possibly hide, grounds for summary judgment in a brief filed in support of the motion or in accompanying summary judgment evidence, the Rule could have easily provided: "The motion for summary judgment *or the brief in support thereof or the summary judgment evidence* shall state the specific grounds therefor." Rule 166a(c), however, does not so provide. "[W]e are not free to disregard . . . [the rule's] plain language. Nor should we revise the rule by opinion." *Alvarado v. Farah Mfg. Co., Inc.*, 830 S.W.2d 911, 915 (Tex. 1992). Although Rule 166a(c) is an admittedly rigorous rule, it must be applied as written.

*Id.* (footnote omitted). In short, "a motion for summary judgment must itself expressly present the grounds upon which it is made. A motion must stand or fall

6

on the grounds expressly presented in the motion. In determining whether grounds are expressly presented, reliance may not be placed on briefs or summary judgment evidence." *Id.* at 341.

Francis's summary-judgment motion argued the lease guaranty did not cover any funds disbursed by First-Citizens at all, because any such funds were disbursed under a "new and separate transaction." It did not draw any distinction between funds distributed to Genex as opposed to EMG, or argue that such funds should be categorized differently or considered separately. We hold the ground on which the trial court rendered summary judgment—that funds disbursed to Genex, unlike other disbursements, were not covered by language of the lease guaranty, which mentioned only EMG—was not "expressly presented" in Francis's summary-judgment motion, and accordingly reverse the trial court's partial summary judgment. *See McConnell*, 858 S.W.2d at 341.

We sustain issue 1 as to the trial court's partial summary judgment rendering a partial take-nothing judgment on First-Citizens's lease-guaranty claim.

### 2. First-Citizens's summary-judgment motion

First-Citizens also argues the trial court reversibly erred by denying its summary-judgment motion. According to the supreme court, however, "a party may not, after trial and an unfavorable judgment, prevail on a complaint that the party's motion for summary judgment should have been granted." *Hernandez v. Ebrom*, 289 S.W.3d 316, 321 (Tex. 2009); *see Ackermann v. Vordenbaum*, 403 S.W.2d 362, 365 (Tex. 1966) (stating "general rule" that order denying summary-judgment motion is "interlocutory in nature and hence not appealable").

First-Citizens argues an exception to the general rule applies here. We disagree. First-Citizens argues an exception that occurs when both parties move for

summary judgment and the trial court grants one motion but denies the other, in which case the appellate court determines the questions presented and, if there is reversible error, renders the judgment the trial court should have rendered. *Tobin v. Garcia*, 316 S.W.2d 396, 400–01 (Tex. 1958); *see Frankoff v. Norman*, 448 S.W.3d 75, 87 (Tex. App.—Houston [14th Dist.] 2014, no pet.). "For this exception to apply, *both parties* must have sought a final judgment in their cross-motions for summary judgment." *Frankoff*, 448 S.W.3d at 87 (emphasis added).

Here, First-Citizens moved for summary judgment "in whole or in part," asserting it was entitled to summary judgment on both the lease guaranty and the credit-card guaranty. Francis, the only doctor to move for summary judgment, moved only for partial summary judgment on the lease guaranty; his motion does not address the separate credit-card guaranty. Because both sides did not seek a final judgment in their cross-motions, the *Tobin* exception does not apply.

First-Citizens also cites this court's decision in *Frontier Logistics, L.P. v. National Property Holdings, L.P.*, in which we determined an appellate court may review the denial of a summary-judgment motion when the moving parties seek summary judgment on the same *issue*, and the trial court grants one motion as to that issue and denies another; in such cases, the court of appeals may review a cross-motion that does not address all claims. 417 S.W.3d 656, 664 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (discussing and applying *FDIC v. Lenk*, 361 S.W.3d 602, 611–12 (Tex. 2012)). As explained above, however, in this case the trial court rendered partial summary judgment on a ground that was not expressly presented in Francis's summary-judgment motion; this ground likewise was not presented in First-Citizens's motion.

Ultimately, we follow the supreme court's guidance in *Ackermann*, in which

8

that court explained why exceptions to the rule that the denial of a summary-judgment motion may not be reviewed after a conventional trial on the merits must be narrow:

> Motions for summary judgment do not always disclose all the pertinent facts relating to a case and the same may be said as to answers and defenses to such motions. Generally, the facts are more fully developed upon a conventional trial than they are by the affidavits and depositions relied upon to support or defeat a motion for summary judgment. It would seem incongruous for a court, upon finding that a judgment following a full and complete conventional trial should be reversed because of the admission of improper evidence, to then review the action of a trial court in overruling a summary judgment, particularly if it appears from the evidence adduced upon the conventional trial that there were genuine issues of fact in the case even though the summary judgment record might not reflect this situation because of an incomplete development of the facts.

*Ackermann*, 403 S.W.2d at 365. On the facts of this case, no exception applies that would allow us to review the trial court's denial of First-Citizens's summary-judgment motion.

We overrule issue 1 as to the denial of First-Citizens's summary-judgment motion.

## C. Liability on the lease guaranty

In issue 2, First-Citizens argues the trial court erred by rendering judgment following the bench trial awarding only $20,809.44 on its claims that the doctors are liable under the lease guaranty,[3] challenging numerous findings of fact and conclusions of law supporting that portion of the judgment. We begin with conclusions of law we hold are dispositive of this issue.

---

[3] We note nothing in the record indicates First-Citizens approved the trial court's judgment as to form or content, which may bar review of a judgment in certain circumstances.

In its conclusions of law, the trial court determined the doctors' lease guaranty did not result in any liability under the lease because (1) a novation, i.e., a substitution of a new agreement extinguishing the lease, occurred, and (2) even if there was no novation, the liability claimed by First-Citizens arose under "an entirely different and separate agreement" outside of the scope of the doctors' guaranty. We hold the trial court reversibly erred.[4]

## 1. Novation

Under North Carolina law, a novation is the substitution of a new contract for an old one which is thereby extinguished. *Intersal, Inc. v. Hamilton*, 834 S.E.2d 404, 412 (N.C. 2019). The essential elements of a novation are (1) a previous valid obligation, (2) the agreement of all the parties to the new contract, (3) the extinguishment of the old contract, and (4) the validity of the new contract. *Id.* (citing *Tomberlin v. Long*, 109 S.E.2d 365, 367–68 (N.C. 1959)). "If the parties do not say whether a new contract is being made, the courts will look to the words of the contracts, and the surrounding circumstances, if the words do not make it clear, to determine whether the second contract supersedes the first." *Whittaker Gen. Med. Corp. v. Daniel*, 379 S.E.2d 824, 827 (N.C. 1989). "The intention of the parties to effectuate a novation must be clear and definite, for novation is never to be presumed." *Kirby Bldg. Sys. v. McNiel*, 393 S.E.2d 827, 832 (N.C. 1990).

In its conclusions of law, the trial court stated the addendum and schedule met the criteria for a novation, thereby extinguishing liability under the lease agreement. The lease addendum, however, states it does not extinguish the lease agreement. In its first paragraph, the lease addendum states:

---

[4] The doctors do not argue there was a novation; instead, they state it is "immaterial," and focus on the trial court's conclusion that any liability arose under a different and separate agreement.

Except as expressly modified herein, all terms and conditions of the Lease remain in full force and effect. The matters set forth in this Texas Lease Addendum ("Addendum") are deemed to be part of the Lease and are cumulative of the rights and obligations of parties set forth in the Lease. In the event of a conflict between the terms and provisions of this Addendum and the terms and provisions of the Lease, it is the intent and agreement of Lessor and Lessee that the conflict shall be resolved in a manner that is the most beneficial to Lessor.

Instead of a clear and definite intention to effectuate a novation, the language of the addendum plainly indicates the addendum does not extinguish the lease. Accordingly, the addendum cannot serve as the basis of a novation. *See Intersal*, 834 S.E.2d at 412 (listing among elements of novation "the extinguishment of the old contract"); *see also Walters v. Rogers*, 151 S.E. 188, 189 (N.C. 1930) (second deed of trust was not novation when in second deed plaintiff "expressly reserved all his rights" as to first deed).

Likewise, the plain language of the lease and the schedule indicate the schedule is not a novation. The lease contemplates the schedule is to be incorporated into the lease, and the terms of the lease may be modified by the schedule:

> **1. Master Lease.** You unconditionally and irrevocably rent and lease from us (together with our successors and assigns) the equipment or motor vehicle or other personal property (together with all current and future accessories, additions, attachments, repairs, replacements, and substitutions, the "Equipment") described in each Equipment Schedule ("Schedule") or Progress Payment Agreement ("PPA") now or later signed by you and us referencing this Master Lease Agreement ("Lease"). The Equipment is or will be purchased from the supplier or vendor indicated in the Schedule or PPA. Each Schedule and PPA, whether now or hereafter existing is incorporated into this Lease by reference, and the terms of this Lease are incorporated into each Schedule or PPA; however, each Schedule will be considered a separate lease for purposes of assignment by us. In the event of any

11

conflict between this Lease and any Schedule, the terms of the Schedule shall control.

The schedule does not contradict the language of the lease. Instead, the schedule references the lease by document number and states, "THIS SCHEDULE INCORPORATES THE TERMS OF THE ABOVE-REFERENCED MASTER LEASE AGREEMENT AND THE ADDENDUM(S) ATTACHED HERETO." This language is incompatible with the trial court's conclusion that the schedule extinguished the lease. *Cf. Intersal*, 834 S.E.2d at 412.

Finally, the trial court states novation was "evidenced by [First-Citizens's] course of action" in addition to the addendum and the schedule. It appears the trial court bases this conclusion on findings First-Citizens entered a "new and distinctly different agreement" with a representative of EMG "pursuant to which Plaintiff extended a line of credit to various parties" instead of purchasing and leasing equipment to EMG as stated in the lease. Under North Carolina law, however, the court looks to "surrounding circumstances" of a novation only if the words of the contracts "do not make it clear" whether a novation has occurred. *Whittaker*, 379 S.E.2d at 827. As analyzed above, reading the addendum and the schedule in conjunction with the lease, the unambiguous terms of these documents indicate there was no intention the addendum and schedule extinguish the lease. *Cf. Intersal*, 834 S.E.2d at 412.

We hold the trial court erred by determining there was a novation extinguishing the lease.

## 2. Different and separate agreement

The trial court additionally concluded that, even if the "new agreement evidenced by Plaintiff's course of action and the Texas Lease Addendum and Equipment Schedule . . . were not a novation, it is an entirely different and separate

12

agreement, and all funding provided by Plaintiff was advanced under that agreement, not the Master Lease Agreement." Under North Carolina law, a guarantor who has contracted to guarantee a specific agreement is not liable under a new agreement substituted without his consent. *O'Grady v. First Union Nat'l Bank*, 250 S.E.2d 587, 598 (N.C. 1978). However, "[a]n exception to these rules holds the guarantor responsible for any changes to which he has either expressly or impliedly consented." *Devereux Properties, Inc. v. BBM & W, Inc.*, 442 S.E.2d 555, 556 (N.C. App. 1994).

Here, the relevant documents show no "new" agreement outside the scope of the doctors' guaranty. The unconditional guaranty signed by each doctor states:

> The provisions of the Lease including any amendments, modifications, extensions, and renewals thereof are hereby consented to by Guarantor without the necessity of giving Guarantor notice thereof and incorporated into this Guaranty by reference and made a part of this Guaranty as fully set out herein, and Guarantors are and shall be bound by all of the provisions thereof, including the agreements, waivers, and obligations set forth therein.

The doctors guaranty covers not only the lease, but "any amendments, modifications, extensions, and renewals thereof," language which encompasses the later addendum and schedule. *See First Citizens Bank & Tr. Co. v. McLamb*, 439 S.E.2d 166, 169 (N.C. App. 1993) ("Where the language of a contract of guaranty . . . provides that the signatory has made him or herself liable for all renewals, extensions and modifications and a renewal, extension or modification occurs, the signatory is bound by the terms of the agreement and will not be discharged from his or her liability."). Accordingly, the doctors' consent to modifications that may have been made by the addendum and schedule shows such modifications do not constitute a different or separate agreement to which they did not consent.

Further, as discussed above regarding novation, nothing in the language of

13

the lease, addendum, or schedule indicates those documents created a different or separate agreement; rather, the documents confirm the ongoing viability of the lease. To the extent the doctors contend inconsistencies among the documents evidence a "different and separate agreement," this argument is unpersuasive. *Cf. O'Grady*, 250 S.E.2d at 598 (guarantor not liable for new agreement substituted without his consent). The addendum and schedule, on which the trial court based its conclusions, do not contain terms that are so different from the lease to constitute a new agreement. As summarized above, the lease states First-Citizens will lease equipment; the schedule states 84 rent payments are due and specifies the amount; and the addendum states a certain interest rate will apply in the event the lease is intended to be, or construed to be, a loan. By their unambiguous terms, the addendum and schedule do not show the creation of a new agreement separate from the lease.[5]

We hold the trial court erred as a matter of law in concluding the doctors had no obligation to guarantee the lease due to the substitution of a "different and separate" agreement for the lease.

### 3. Disposition

The trial court's findings of fact are made through the lens of its conclusions that the lease was superseded in some way, either by novation or by the substitution of a different and separate agreement. We hold these conclusions to be

---

[5] We further note that even were there an inconsistency in the documents, they contain provisions for resolving inconsistencies. For example, the lease says the schedule shall govern over the lease if their terms conflict, while the addendum states the parties intend that any conflicts between the addendum and lease are to be construed in the manner most favorable to First-Citizens. These terms further weigh against a conclusion that inconsistencies in the documents created a different and separate agreement.

We also note that we do not consider the admissibility or significance, if any, of Progress Payment Agreements or PPAs that First-Citizens offered into evidence, as the trial court did not base its conclusions on those documents.

erroneous as a matter of law. We further note the trial court did not make findings that would control under a correct theory of law, namely, that the lease had not been superseded. When the trial court makes findings of fact and conclusions of law under an erroneous interpretation of law and does not make findings that would control the case under a correct legal interpretation, the proper remedy is to reverse the judgment and remand the case for further proceedings.[6] *Jones v. Smith*, 291 S.W.3d 549, 553–55 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *see Advanced Pers. Care, LLC v. Churchill*, 437 S.W.3d 41, 47–48 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (applying *Jones* and reversing and remanding when trial court erred by treating agreements separately and not as one indivisible contract).

We sustain issue 2.

### D. Trial court's award

In issue 3, First-Citizens argues the evidence is legally- and factually-insufficient to support the trial court's award of $20,809.44 to First-Citizens on its claims under the lease guaranty. As we have already reversed this portion of the judgment, we dismiss issue 3 as moot. Tex. R. App. P. 47.1.

### E. Liability on the credit guaranty

In issue 4, First-Citizens challenges the trial court's judgment that it takes nothing on its credit-guaranty claim. This claim is based on a guaranty signed by the doctors covering "all obligations of [EMG] arising from the credit card

---

[6] While the doctors argue remand is waived because First-Citizens requested only rendition, such a result would be warranted only if First-Citizens specifically requested that we *not* remand, which is not the case here. *See Stevens v. National Educ. Centers, Inc.*, 11 S.W.3d 185, 186 (Tex. 2000); *Garza v. Cantu*, 431 S.W.3d 96, 108–10 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (discussing *Stevens* and remanding for new trial even though appellant asked only for rendition because appellant "did not adopt a 'rendition-or-bust' strategy").

15

account(s) with [First-Citizens]." First-Citizens argues the guaranty, along with a credit-card statement to EMG showing a balance of $32,718.82, entitles them to payment of that balance from the doctors under the credit guaranty.

The credit guaranty, however, does not list the account number listed on the statement or otherwise reference any specific account EMG had with First-Citizens. First-Citizens argues this is immaterial under the terms of the guaranty, which it argues is broad enough to cover an unspecified account, provided the account was between EMG and First-Citizens. The guaranty, however, covers "*the* credit card account(s)" that EMG had with First-Citizens. This language is incompatible with First-Citizens's argument, which essentially asks us to hold the guaranty covers *any* credit-card accounts that EMG might have had with First-Citizens, under which theory the doctors would be liable for any amount listed on any credit-card statement issued to EMG. This is contrary to the language of the guaranty, particularly given the rule under North Carolina law that "the liability of a guarantor is not to be enlarged beyond the strict terms of the contract." *O'Grady*, 250 S.E.2d at 597 (citing *Shoe Co. v. Peacock*, 64 S.E. 437 (N.C. 1909)).

First-Citizens further argues the trial court reversibly erred by excluding a credit-card agreement relevant to EMG's account. However, nothing in the offer of proof on the credit-card agreement indicates the agreement between EMG and First-Citizens would link the statement showing EMG's balance to "the credit card account(s)" described in the guaranty.

We overrule issue 4.

## F. Francis's appeal

In one issue, Francis argues the trial court's award of $20,809.44 on the

16

lease-guaranty claim does not conform to the trial court's findings of fact, and the trial court should have rendered a take-nothing judgment on First-Citizens's lease-guaranty claim against Francis. Having already reversed this portion of the judgment, we dismiss this portion of Francis's issue as moot. Tex. R. App. P. 47.1.

Francis also challenges the trial court's award of attorney's fees. Here, First-Citizens's success on the lease-guaranty claim is the only basis on which the trial court could have awarded attorney's fees. Because we have reversed the trial court's judgment as to that claim, we likewise reverse the portion of the trial court's judgment awarding attorney's fees to First-Citizens as to Francis and remand the case for further proceedings. *See O.C.T.G., L.L.P. v. Laguna Tubular Prods. Corp.*, 557 S.W.3d 175, 193 (Tex. App.—Houston [14th Dist.] 2018, pet. dism'd by agr.) (when award of attorney's fees is based on success on claim and judgment is reversed as to that claim and case remanded, proper disposition is to reverse and remand award of attorney's fees). We sustain the attorney's-fees portion of Francis's issue on appeal.

## III.   CONCLUSION

Having sustained First-Citizens's issue 1 in part and issue 2, and Francis's sole issue in part, we reverse the portions of the trial court's judgment awarding First-Citizens $20,809.44 in damages and awarding attorney's fees against Francis. We otherwise affirm the judgment, including to the extent it awards nothing as to First-Citizens's credit-guaranty claim. We remand the case for further proceedings. Tex. R. App. P. 43.2(d).


/s/     Charles A. Spain
          Justice

Panel consists of Justices Jewell, Spain, and Wilson.

17